SECURITIES AND EXCHANGE COMMISSION, Plaintiff-Appellee,

v.

AN–CAR OIL COMPANY, INC., et al., Defendants-Appellees,

Cyrus W. Partington et al., Intervenors-Appellants.

No. 78–1540.

United States Court of Appeals, First Circuit.

Argued April 3, 1979.

Decided Aug. 27, 1979.

Edward Woll, Jr., Boston, Mass., with whom George P. Michaely, Jr., Robert N. Hickey, Washington, D. C., and Sullivan & Worcester, Boston, Mass., were on brief for intervenors-appellants.

Frank D. Kirby, Boston, Mass., with whom Steven J. Marullo, and Catherine M. Oliver, Boston, Mass., were on brief for defendants-appellees An-Car Oil Co., Inc., et al.

David Ferber, Sol. to the Commission, Washington, D. C., with whom Jacob H. Stillman, Associate Gen. Counsel, and Judy L. Chesser, Atty., Washington, D. C., were on brief for plaintiff-appellee, Securities and Exchange Commission.

Neal E. Satran, Boston, Mass., on brief for Official Creditors' Committee of An-Car Oil Co., Inc., et al., amicus curiae.

Before COFFIN, Chief Judge, CAMPBELL and BOWNES, Circuit Judges.

BOWNES, Circuit Judge.

This appeal is brought by Cyrus W. Partington, et al., putative intervenors in a securities fraud case brought by the Securities and Exchange Commission (SEC),

plaintiff-appellee, against defendants-appellees, An-Car Oil Company, Inc. (An-Car), Calvin Oil Co., Ltd., Wichita Drilling Corp., Shelwell Services, Inc., John C. Sterge, Stanley H. Sichel, Donald M. Patten, Mary L. Savery, James I. F. Matthew, and Clyde Shelton. The appeal is from an order of the District Court for the District of Massachusetts dated September 14, 1978, granting Sterge's application on behalf of An-Car and Wichita Drilling Corp. for leave to file voluntary petitions in bankruptcy pursuant to Chapter XI of the Bankruptcy Act and granting Sterge's request that the equity receivership established at the request of the SEC on May 24, 1976, be terminated. Appellants also appeal the district court's denial, on November 3, 1978, of their motion for reconsideration of its September 14, 1978, order. Additionally, they appeal the district court's failure to act on their two separate motions to intervene in the SEC case, filed on February 24, 1977, and May 15, 1978.

Appellants urge before us that, although they are not parties, they have standing to appeal; that the district court erred in failing to make findings of fact and rulings of law with respect to the order of September 14, 1978; that the court had jurisdiction to continue the equity receivership; and that termination of the receivership was an abuse of the district court's discretion.

The appellees, An-Car, et al., refute squarely appellants' arguments and ask for attorney's fees as well as costs.

The SEC takes the ambivalent position that, while continuation of the receivership would have provided the greatest protection for investors, the investors' interests can probably be safeguarded in the Chapter XI proceedings.

In their amicus brief, the Official Creditors' Committee of An-Car posits that reinstatement of the receivership would deprive the creditors of their claims, thus working an inequity. They report that there have already been several conferences with the bankruptcy judge and meetings of the Creditors' Committee at which it has been established that the claims of the investors at a minimum, will be treated the same as the claims of the creditors.

*Facts*

On December 31, 1975, six of the eventual thirty-four Partington plaintiffs [1] filed a complaint against An-Car, Sterge, its president, treasurer, and director, Patten, a vice-president and a director, Sichel, a vice-president, Matthew, a vice-president, and Savery, the secretary and a director of An-Car. They alleged that the defendants violated various provisions of the Securities Act, the Securities Exchange Act, and Colorado statutes,[2] and committed common law fraud, breach of contract and breach of trust. Appellants had purchased working interests in oil and gas wells and leases and limited partnership interests in oil and gas exploration programs. They sought $397,269.85 in actual damages and $1,000,000 in punitive damages, plus interest and attorney's fees. This action was drawn to Judge Caffrey of the United States District Court for the District of Massachusetts.

The SEC commenced the instant suit against An-Car and the other nine defendants on May 21, 1976, about five months subsequent to the suit brought by appellants. The SEC alleged that An-Car, Sterge, and the other defendants violated the registration provisions of the Securities Act, 15 U.S.C. §§ 77e(a) and 77e(c), and the antifraud provisions of the Securities Exchange Act, 15 U.S.C. § 78j(b), and rule 10b–5, 17 C.F.R. 240.10b–5. This action was drawn to Judge Tauro of the United States District Court for the District of

---

1. The complaint was amended on March 2, 1976, to add twenty-eight plaintiffs, bringing the total to thirty-four.

2. More specifically, appellants charged that defendants violated §§ 5 and 17 of the Securities Act of 1933, 15 U.S.C. §§ 77(e) and 77q, § 10(b)

of the Exchange Act, 15 U.S.C. § 78j(b), rule 10b–5, 17 C.F.R. 240.10b–5; §§ 11–51–106, 11–51–115 and 11–51–123 of the Colorado Revised Statutes, and Rule 7 as promulgated by the Colorado Securities Commissioner.

Massachusetts. The central figure in both actions is John C. Sterge, the president, director and sole stockholder of An-Car.

The SEC sought an injunction against future violations pursuant to section 20(b) of the Securities Act, 15 U.S.C. § 77t(b) and section 21(e) of the Securities Exchange Act, 15 U.S.C. § 78u(e). It requested the appointment of an equity receiver for An-Car, Calvin Oil, and Wichita Drilling and an order directing disgorgement by all defendants except Shelwell Service and Clyde Shelton.

On May 24, 1976, Judge Tauro conducted a hearing and granted the SEC's application for a temporary restraining order, enjoining all creditors from commencing, prosecuting, continuing, or enforcing suit against An-Car, Calvin Oil, and Wichita Drilling and ordering the defendants to cease participation in the business of An-Car and Calvin Oil. Judge Tauro appointed John P. Driscoll, Jr., temporary receiver of all assets owned by An-Car, Calvin Oil, and Wichita Drilling, empowering him to marshall all assets, prosecute claims, and hire employees as necessary. He also ordered defendants to disgorge funds paid to them by public investors and income therefrom so that the receiver could distribute the money on a pro rata share to those investors.

On the same day that Judge Tauro issued the temporary restraining order relative to the SEC suit, appellants had a hearing before Judge Caffrey concerning their parallel, private suit against An-Car, Sterge, et al. They sought a preliminary injunction enjoining Sterge from transferring certain assets, including his shares of stock in An-Car, and restraining certain banks and corporations from transferring Sterge's record ownership of stock on their books. In deference to Judge Tauro's restraining order, appellants modified their requested order by deleting reference to An-Car. Appellants and Sterge entered into a court-approved stipulation, whereby Sterge was enjoined from transferring certain assets, including a certificate of deposit in the

amount of $100,000, issued by the Neponset Valley Bank and Trust Company. In a separate stipulation between appellants and the Neponset Valley Bank, the bank agreed not to transfer the record of ownership of the certificate of deposit.

By the middle of August, 1976, all defendants in the SEC suit, except An-Car, Calvin Oil, Wichita Drilling, and John Sterge, had consented to a permanent injunction and final judgment as to them. On August 17, 1976, Judge Tauro consolidated appellants' action with the Dunbrack case, a similar private securities fraud suit against the same defendants.[3] He denied a motion to consolidate the private action with the SEC action against An-Car. Since August, 1976, there have been no material developments with respect to the private action and we therefore focus on the SEC suit.

On August 18, 1976, a final consent judgment was entered permanently enjoining An-Car, Wichita Drilling, Calvin Oil, and Sterge from engaging in acts or practices which constitute violations of the antifraud provisions of the Securities Exchange Act as set forth in the complaint. The defendants agreed to the temporary continuation of the equity receivership. At the receiver's request, the district court ordered all personal assets of Sterge held for the benefit of An-Car.

On January 13, 1977, the First National Bank of Boston filed a motion to intervene in the SEC suit to protect its interest as assignee in the $100,000 certificate of deposit issued by the Neponset Valley Bank in Sterge's name. Soon thereafter, appellants responded with a motion to intervene of their own, claiming in essence that the district court's order of May 24, 1976, in the private suit against An-Car created a judicial lien on the certificate of deposit in their favor. The SEC opposed intervention by either party. Although the district court never acted on the motions for intervention, on February 7, 1977, it ordered all parties and the receiver in the SEC action to serve

---

**3.** The private action instituted by the Partington plaintiffs and drawn originally to Judge

Caffrey was transferred to Judge Tauro upon consolidation with the Dunbrack case.

all papers on the Partington and Dunbrack plaintiffs and also to notify them of hearings.

The receiver combed through the entangled records of An-Car, Wichita, and Calvin and concluded that Sterge was deeply in debt to An-Car. By stipulation, Sterge acknowledged that he owed An-Car $1,187,939 and agreed to disgorge that amount to the receiver by deeding title to real properties and delivering certain personal property to the receiver. Included in the disgorged assets was all of the issued and outstanding stock of An-Car. The district court ordered disgorgement on April 14, 1977, along the lines of the stipulation agreed to by the SEC and Sterge.

The receiver filed a lengthy report on February 1, 1978, detailing the "abysmal condition" in which he found An-Car's financial ledgers and noting that Sterge "vacillated between wary cooperation with the Receiver and outright duplicity." He recommended that, given the precarious state of its finances, a plan for reorganization of An-Car be formulated. He also suggested that the receivership be terminated, stating:

> Indeed the continuation of or termination of the equity receivership should be examined and in that context a decision made as to the proper forum to effect a plan of reorganization or conduct a deferred liquidation. The basis for that determination should include a careful balancing of the interests of both investors and creditors in view of the underlying circumstances of this particular case and the status of equity receivership proceeding.

Perhaps taking a clue from the receiver's report, Sterge, on February 3, 1978, requested the district court to permit him to file a voluntary petition under Chapter XI of the Bankruptcy Act for An-Car. Within three days, appellants submitted a memorandum to the receiver urging that bankruptcy proceedings be staved off until the receiver had an opportunity to reduce the investors' fraud claims against An-Car to a sum certain, in order to ensure provability in bankruptcy. The SEC expressed the opinion that perhaps the time had come to vacate that portion of the May 24, 1976 order restraining creditors from bringing a suit against An-Car, but that it was opposed to returning the managerial reins to Sterge. The SEC also asserted the necessity of continuing the equity receivership "for the purpose of preserving the assets thus far marshalled and for ultimately liquidating those assets and making a distribution to the defrauded public investors."

On April 11, 1978, Sterge amended his original request to file a voluntary petition in bankruptcy by adding a request that the equity receivership be terminated. The SEC filed an opposition to Sterge's request, reiterating that Sterge should never again control An-Car and that the receivership should continue "for the purpose of ultimately making a distribution to investors." It adverted to the possibility that the investors would be precluded from asserting their fraud claims in bankruptcy proceeding. Appellants also filed an opposition to Sterge's amended petition, renewing their plea that the equity receivership continue. Sterge answered the SEC's opposition by asserting that the district court lacked jurisdiction to continue the equity receivership.

On May 15, 1978, appellants filed a second motion to intervene in the SEC action. They asked the district court to instruct the receiver to classify and then distribute to them a pro rata share of their claims. Again the SEC opposed intervention stating that appellants did not have a jeopardized interest that would justify intervention.

The district court held a hearing on May 15, 1978, on Sterge's Chapter XI petition and the First National Bank's motion for intervention. Appellants participated in the hearing and, at the request of the court, prepared a proposed form of order by which the court would sanction Sterge's petition to file in bankruptcy and continue the equity receivership. Counsel for Sterge also submitted a proposed order, which suggested earmarking the disgorged assets until the bankruptcy judge made a determination whether the investors had a priority fund.

On September 14, 1978, the district court granted Sterge's petition for leave to file bankruptcy petitions and terminated the equity receivership. The court's order was not supplemented by any findings of fact or rulings of law.

The motions of the SEC and appellants for reconsideration of the order were denied. This appeal followed.

Our first task is to determine whether to entertain the appeal. Appellants were not parties to the SEC suit, and the district court did not act on their two motions to intervene. Ordinarily, only a person who was a party to the proceeding below and who is aggrieved by the judgment or order is entitled to appeal. *Coffey v. Whirlpool Corp.*, 591 F.2d 618, 619 (10th Cir. 1979); *Moten v. Bricklayers, Masons and Plasterers International Union*, 177 U.S.App.D.C. 77, 80, 543 F.2d 224, 227 (D.C. Cir. 1976); 9 Moore's Federal Practice ¶ 203.06 at 715–16 (2d ed. 1975). Nevertheless, appellants urge us to hear their appeal, asserting standing under *SEC v. Lincoln Thrift Corp.*, 577 F.2d 600 (9th Cir. 1978).

*Lincoln Thrift* presents the converse of the factual situation here. The nonparty creditors in *Lincoln Thrift* appealed the denial of their motion to terminate the equity receivership and to allow them to file a petition in bankruptcy. The court sua sponte raised the standing issue and held that the creditors did have standing because they had been treated below as parties, served with notice of the liquidation hearing, afforded an opportunity to participate therein, and had a legitimate interest in the proceedings. As authority, the court relied on a decision of Judge Learned Hand, *West v. Radio-Keith Orpheum Corp.*, 70 F.2d 621 (1934), quoting it at length. We do not view *West* as direct authority for the proposition forwarded in *Lincoln Thrift*, since the equities which guided Judge Hand to treat

appellants as having standing were not present in *Lincoln Thrift*.[4]

Although we have reservations as to the precedential value of *Lincoln Thrift* on the standing issue, we accept it for purposes of considering appellants' position in the light most favorable to them. Assuming that appellants have standing to appeal, we next examine whether the district court abused its discretion in granting the motion to terminate the equity receivership and allowing the petition to file in bankruptcy under Chapter XI.

The district court possesses a broad range of discretion in deciding whether or not to terminate an equity receivership and our review is limited to determining whether that discretion has been abused. *Lincoln Thrift Association, supra,* 577 F.2d 600; *Bailey v. Proctor*, 160 F.2d 78, 82 (1st Cir.), *cert. denied*, 331 U.S. 834, 67 S.Ct. 1515, 91 L.Ed. 1847 (1947). In granting the motion to terminate the equity receivership, the district court did not issue any findings of fact or rulings of law. Despite the assertion of appellants that this omission constituted reversible error, there is more than enough information in the briefs and lengthy record for us to rule that the district court properly exercised its discretion. We see no need to remand for specific rulings and findings.

We hesitate to second-guess a discretionary decision made by the district court concerning a complicated matter with which it had an intimate working knowledge for more than two years. There are numerous factors indicating clearly that the district court did not abuse its discretion in granting Sterge's motion to terminate the receivership and allowing the filing of the Chapter XI petition. The receiver had finished his task of putting the corporate

---

4. In *West v. Radio-Keith Orpheum Corp.*, 70 F.2d 621 (2d Cir. 1934), the receiver had haled the nonparty creditor into the proceeding against his will, "in invitum" and then asserted that appellant had no standing to appeal. Judge Hand reasoned that the receiver should not have it both ways: coerce the appellant to appear at trial and then attempt to bar the appellate door to him. There were no such equities present in *Lincoln Thrift*, since it does not appear that the creditors were brought in "in invitum" nor that the receiver attempted to thwart their right to appeal.

books of An-Car, Wichita, and Calvin Oil in order and had arranged the disgorgement of more than a million dollars from the major offender in the SEC action, John Sterge. As the SEC and the receiver conceded, the time had come to lift the injunction so that long-suffering creditors of An-Car could receive payment of their claims. An-Car was insolvent in 1976 when the receiver first was appointed, as it was in 1978, and generally, bankruptcy proceedings are preferred to liquidation of a corporation through an equity receivership. *See SEC v. Lincoln Thrift Association, supra,* 577 F.2d at 603; *SEC v. Bartlett,* 422 F.2d 475, 477–78 (8th Cir. 1970); *Esbitt v. Dutch-American Mercantile Corp.,* 335 F.2d 141, 143 (2d Cir. 1964); *Los Angeles Trust Deed & Mortgage Exchange v. SEC,* 285 F.2d 162, 182 (9th Cir. 1960).

At the heart of appellants' argument is the assertion that the receivership assets were marshalled to protect their investments and that they, therefore, have an equitable lien on those monies. Appellants maintain that the bankruptcy court does not have jurisdiction over the receivership assets. This argument is based on section 2(a)(21) of the Bankruptcy Act, 11 U.S.C. § 11(a)(21),[5] which provides that where a receiver has been appointed more than four months in advance of the date of bankruptcy, the receiver need not turn over the receivership assets to the bankruptcy court. They are also concerned that the termination of the equity receivership and filing of the petition in bankruptcy *may* deprive them of the opportunity to assert their fraud claims against An-Car. This speculative concern relates to Chapter VI § 57(d) of the Bankruptcy Act, 11 U.S.C. § 93(d).[6]

We do not consider these issues ripe for adjudication in this forum. The bankruptcy court has broad powers under the Bankruptcy Act.

> This jurisdiction of the bankruptcy court extends to the determination of controversies relating to all property in the debtor's physical possession *or* in the hands of the debtor's agent at the time of the filing of a petition in bankruptcy. In every case the bankruptcy court has power, in the first instance, to determine whether it has that actual or constructive possession which is essential to its jurisdiction to proceed (emphasis in original).

*Harris v. Brundage,* 305 U.S. 160, 163, 59 S.Ct. 131, 133, 83 L.Ed. 100 (1935). It is the forum for deciding initially appellants' claim that they have a lien on the receiver-

---

**5.** Section 2(a)(21) of the Bankruptcy Act, 11 U.S.C. § 11(a)(21), provides in pertinent part:

> (a) The courts of the United States hereinbefore defined as courts of bankruptcy are hereby created courts of bankruptcy and are hereby invested, within their respective territorial limits as now established or as they may be hereafter changed, with such jurisdiction at law and in equity as will enable them to exercise original jurisdiction in proceedings under this title, in vacation, in chambers, and during their respective terms, as they are now or may be hereafter held, to—
>
> . . . . .
>
> (21) Require receivers or trustees appointed in proceedings not under this title, assignees for the benefit of creditors, and agents authorized to take possession of or to liquidate a person's property to deliver the property in their possession or under their control to the receiver or trustee appointed under this title or, where an arrangement or a plan under this title has been confirmed and such property has not prior thereto been delivered to a receiver or trustee appointed under this title, to deliver such property to the debtor or

other person entitled to such property according to the provisions of the arrangement or plan, and in all such cases to account to the court for the disposition by them of the property of such bankrupt or debtor: *Provided, however,* That such delivery and accounting shall not be required, except in proceedings under section 205 and chapters 10 and 12 of this title, if the receiver or trustee was appointed, the assignment was made, or the agent was authorized more than four months prior to the date of bankruptcy.

**6.** Chapter VI § 57(d) of the Bankruptcy Act, 11 U.S.C. § 93(d), provides in pertinent part:

> That an unliquidated or contingent claim shall not be allowed unless liquidated or the amount thereof estimated in the manner and within the time directed by the court; and such claim shall not be allowed if the court shall determine that it is not capable of liquidation or of reasonable estimation or that such liquidation or estimation would unduly delay the administration of the estate or any proceeding under this title.

ship's assets.[7] *See* Chapter XI § 311 of the Bankruptcy Act, 11 U.S.C. § 711,[8] Collier on Bankruptcy ¶ 3.02 at 156–63 (14th ed. 1978). It would be premature for us to determine the applicability of section 2(a)(21) of the Act since this, too, is an issue which the bankruptcy court is empowered to decide. *See In re Distillers Factors Corp.,* 187 F.2d 685, 687 (3d Cir. 1951); *Yoshinuma v. Oberdorfer Insurance Agency,* 136 F.2d 460, 461 (5th Cir. 1943). The district court order of September 14 did not affect any rights appellant may or may not have acquired in the fund marshalled by the equity receiver. It is the province of·the bankruptcy court to determine whether appellants have acquired any legally recognizable interest in that fund.

It is too early to predict whether or not the Bankruptcy court will reject appellants' fraud claims under section 57(d), for the court may decide that they are capable of liquidation. Such a determination is vested in the discretion of the bankruptcy court and, as noted by the court in *In the Matter of Cartridge Television, Inc.,* 535 F.2d 1388, 1391 (2d Cir. 1976): "To reject an easily provable securities fraud claim, for instance, might well amount to an abuse of discretion."

 Finally we reject appellants' contention that Sterge was estopped from seeking the termination of the receivership because of the consent he entered into with the SEC. A reading of the judgment reveals that Sterge agreed only to the "temporary continuation of the receivership" and in no way bound himself unto eternity.

*Affirmed.*[9]

---

**7.** An-Car informs us in its brief that the appellants have raised this argument before the bankruptcy court.

**8.** Chapter XI § 311 of the Bankruptcy Act, 11 U.S.C. § 711 provides: "Where not inconsistent with the provisions of this chapter, the court in which their petition is filed shall, for the pur-

poses of this chapter, have exclusive jurisdiction of the debtor and his property, wherever located."

**9.** Defendants-appellees' request for attorney's fees is denied, and their request for costs is allowed.