Lionel AUBIN, et al.,
Plaintiffs, Appellees,

v.

Stanley FUDALA, et al.,
Defendants, Appellees.

Appeal of TOWN OF BEDFORD and Richard Audette, in his capacity as Chief of Police of the Town of Bedford, Defendants, Appellants.

Lionel AUBIN, et al.,
Plaintiffs, Appellants,

v.

Stanley FUDALA, et al.,
Defendants, Appellees.

Lionel AUBIN, et al.,
Plaintiffs, Appellees,

v.

Stanley FUDALA, Paul Biron and Leo Morency, Defendants, Appellants.

Lionel AUBIN, et al.,
Plaintiffs, Appellees,

v.

Stanley FUDALA, et al.,
Defendants, Appellees.

Appeal of John J. MEANEY,
Defendant, Appellant.

Nos. 83–1147 thru 83–1150.

United States Court of Appeals,
First Circuit.

Argued Sept. 13, 1983.
Decided Nov. 1, 1983.

Mark L. Mallory, Manchester, N.H., with whom Law Offices of Augustine J. McDonough, P.A., Manchester, N.H. was on brief, for Town of Bedford and Richard Audette, in his capacity as Chief of Police of the Town of Bedford.

Theodore Wadleigh, with whom Katherine M. Hanna, and Wadleigh, Starr, Peters, Dunn & Chiesa, Manchester, N.H.

were on brief, for Stanley Fudala, Paul Biron and Leo Morency.

Robert K. Mekeel, with whom Joseph F. McDowell, III, and Craig, Wenners & McDowell, P.A., Manchester, N.H., were on brief, for Lionel Aubin, et al.

Betsy S. Westgate, Asst. Atty. Gen., Concord, N.H. with whom Gregory H. Smith, Atty. Gen., Concord, N.H. was on brief, for John J. Meaney.

Before CAMPBELL, Chief Judge, SKELTON,* Senior Circuit Judge, and BREYER, Circuit Judge.

BREYER, Circuit Judge.

The legal questions that plaintiffs and defendants raise in their cross-appeals in this "civil rights/tort" case are for the most part rooted in the facts and the evidence produced at trial. That is to say, the answers to the parties' legal claims—*e.g.* that the district court should have given certain instructions, that it should have directed verdicts on certain issues but not others—can be determined only by a study of the record. We have conducted that study and we conclude that the judgments of the district court should be affirmed. This opinion, rather than reiterating all the relevant facts, testimony and arguments, will simply set forth enough trial-related information to indicate to the parties the reasoning on which our conclusion rests.

I

The suit underlying this appeal is a combined "federal civil rights/state negligence" action that Maurice and Normande Aubin and their two sons, Lionel and Norman, brought against the New Hampshire town of Bedford, its police chief (Audette), four police officers (Fudala, Biron, Morency, Abood) and a New Hampshire state trooper (Meaney). The claims arose out of the fact that the police shot Lionel Aubin by mistake while investigating a robbery with which he had absolutely no connection. Many of the surrounding facts are disputed; but for purposes of this appeal,

we can take the following as a rough description of what is either agreed upon or at least firmly established.

On New Year's Eve, 1979, someone called the Bedford Police Department and reported a burglary in progress at the home of the Kuzakis', exact address unknown. The police dispatcher, apparently knowing the approximate location, said to Officer Fudala, "Stan, we've got a burglary in progress at the Kuzakis residence, Palomino and Whitmore," and he broadcast that information to policemen Biron and Abood. Trooper Meaney received the same broadcast and went to the scene, arriving there first.

Meaney saw two people on the corner; one fled; Policemen Fudala, Abood and Biron arrived; and all began to search the area. Fudala noticed plaintiff Lionel Aubin in the basement of his family home. Lionel noticed Fudala's flashlight through the basement window. Thinking that a burglar was outside, Lionel shouted to his brother, "Norman, in the backyard, quick." Lionel went up the basement/backyard stairs, grabbed a shovel, stepped out into the yard, at which point Fudala, perhaps thinking Lionel was threatening him, shot him in the right shoulder.

Trooper Meaney, hearing the shot, went into the backyard, saw Lionel and Norman (who had come out of the house), and then ordered Norman to lie on the ground, where he handcuffed him. The police took Lionel to the hospital and took Norman to the police station.

Policemen Biron and Morency then went to the Aubin's door and asked Ronald (another Aubin brother) if they could search. Ronald initially refused, then relented. The police searched for a few minutes and left.

Sometime later that evening, Maurice and Normande Aubin, who had not been at home, found out about their sons' plight, retrieved Norman from the police station and found Lionel in the hospital.

* Of the Federal Circuit, sitting by designation.

Needless to say, many subsidiary matters are hotly disputed. The plaintiffs introduced evidence tending to show that the police had behaved in a way that can charitably be described as idiotic, cavalier, or worse. The defense introduced evidence designed to show that the police had behaved reasonably under tragically confused circumstances.

The results of the Aubin's state tort and federal civil rights claims were as follows.

1. The jury awarded Lionel Aubin $300,000 on his common law tort claim against policemen Fudala and Biron, the chief of police, and the town. It awarded him $500 on a parallel federal civil rights action against policeman Fudala.

2. The jury found in favor of Maurice and Normande Aubin (the parents) on their civil rights claim complaining of an unlawful search of their house; but, the jury, following the court's instructions, awarded only nominal damages ($1).

3. The jury found against Norman Aubin on his tort and civil rights claims.

4. The court directed a verdict against all plaintiffs on a different civil rights claim—one that in essence charged an alleged agreement among the defendants to cover up their mistake in shooting Lionel.

Thus, Lionel was awarded $300,500; his relations effectively received nothing.

## II

Defendants' appeal rests primarily upon their claims of faulty jury instructions. The case was tried on a theory of negligence on the part of the policemen, the police chief who supervised their training, and the town that employed them. The parties agree that the district court correctly defined "negligence" for the jury. Defendants argue, however, that the court should have instructed the jury more explicitly 1) about the reasonableness of the policemen's behavior, 2) about the reasonableness of the police department's training and supervision, and 3) about the reasonableness of behavior that violates a specific rule or regulation.

In reviewing these instructions we must satisfy ourselves "that the instructions show no tendency to confuse or mislead the jury with respect to the applicable principles of law." *Harrington v. United States*, 504 F.2d 1306, 1317 (1st Cir.1974). *See also McKinnon v. Skil Corp.*, 638 F.2d 270, 274 (1st Cir.1981); *Hubbard v. Faros Fisheries, Inc.*, 626 F.2d 196, 201 (1st Cir.1980). The extent to which the instructions must elaborate upon those basic principles is primarily up to the trial judge. "The trial judge is not required to elaborate the meaning of controlling legal standards in terms of the particular facts of the case." *Hubbard v. Faros Fisheries, Inc.*, 626 F.2d at 201. Only where the facts are unusually complex—to the point where there is significant risk of jury confusion—will appellate courts overturn trial courts on the issue of elaboration. *Choy v. Bouchelle*, 436 F.2d 319, 325 (3d Cir.1970) (factual complexity involved); *Lessig v. Tidewater Oil Co.*, 327 F.2d 459, 466 n. 13 (9th Cir.1964) (same); *United States v. 145.31 Acres of Land*, 54 F.R.D. 359, 361 (M.D.Pa.1972) (lack of factual complexity obviates need to correlate jury charge with reference to facts). Defendants' request for additional instructions here would seem to present a similar issue: was the trial court's decision that the facts and law were *not* complicated enough to call for legal elaboration of specific aspects of negligence within the court's lawful power?

This case, as presented to the jury, was not unusually complex, nor was there any unusual risk of jury confusion. Defendants wanted an instruction that would have made clear to the jury that the simple failure by the police to choose another, possibly better course of action does not necessarily show negligence. They wanted the court to tell the jury that it must determine "negligence" in light of what was known at the time, without benefit of hindsight. They wanted the court to go beyond its fairly simple instruction on supervision and training. (The court told the jury that

Lionel Aubin must establish ... that Mr. Audette did some act which the average chief of police in the exercise of ordinary care would not do, or failed to do something that the average chief of police in the exercise of ordinary care would do when prompted by the considerations that ordinarily regulate conduct of the affairs of a police department.)

And, they wanted the court to explain that violation of police department regulations does not *automatically* show negligence. *See Emery v. Booth,* 114 N.H. 646, 647, 325 A.2d 788 (1973); *Davy v. Greenlaw,* 101 N.H. 134, 135, 135 A.2d 900 (1957); *Martin v. Kelley,* 97 N.H. 466, 468–69, 92 A.2d 163 (1952); *Flynn v. Gordon,* 86 N.H. 198, 200, 165 A. 715 (1933). All these requested instructions involved elaboration of the basic negligence standard. Since counsel argued these very points to the jury, since the case as presented was relatively simple, since the court gave no erroneous instruction on any of these points, and since the court's instructions about negligence were correct and covered in a general way the points at issue, we find no error.

Defendants' strongest "instruction based" argument concerns the courts' charge about Lionel Aubin's comparative negligence. The court told the jury that the "defendants here claim that Lionel Aubin is legally at fault [in that he] ... was negligent in failing to telephone the police rather than coming into the backyard." Defendants argue that this instruction could have led the jury to believe that Lionel Aubin's contributory negligence could have consisted only of a 'failure to telephone the police' when he saw a flashlight shining in the backyard. In fact, say defendants, Lionel Aubin's negligence might have consisted of other failures, such as a simple failure to check carefully by looking through another window before going out into the yard.

■ In evaluating this argument we have looked through the record, keeping in mind that the "question on appeal is not whether an instruction was faultless in every respect, but whether the jury, consider-

ing the instruction as a whole, was misled." *Mid-Texas Communications Systems, Inc. v. American Telephone and Telegraph Co.,* 615 F.2d 1372, 1390 n. 15 (5th Cir. 1980), *cert. denied sub nom. Woodlands Telecommunications Corp. v. Southwestern Bell Telephone Co.,* 449 U.S. 912, 101 S.Ct. 286, 66 L.Ed.2d 140 (1980). *See also Cupp v. Naughten,* 414 U.S. 141, 146–47, 94 S.Ct. 396, 400, 38 L.Ed.2d 368 (1977); *Johnson v. A/S Ivarans Rederi,* 613 F.2d 334, 350 (1st Cir.1980), *cert. dismissed,* 449 U.S. 1135, 101 S.Ct. 959, 67 L.Ed.2d 325 (1981). Since the basic instructions on negligence and comparative negligence were correct, since the arguments made to the jury were quite clear and simple and since defendants did, in fact, make a considerable issue of the "failure to telephone the police," we do not see a serious risk that the jury was misled by the court's use of the "failure to telephone" example. "When the instructions, taken together, properly express the law applicable to the case, there is no error even though an isolated clause may be inaccurate, ambiguous, incomplete or otherwise subject to criticism." *Johnson v. Bryant,* 671 F.2d 1276, 1280 (11th Cir.1982). Given the whole set of instructions, it is simply unreasonable to believe that a juror might have thought Lionel Aubin was contributorily negligent and yet felt constrained by the instructions not to find "contributory negligence."

■ Defendants go on to make two 'weight of the evidence' claims. First, they argue that the jury's finding that Lionel Aubin was not contributorily negligent was against the weight of the evidence. In their view, a jury *must* find that a reasonably prudent person seeing a flashlight and fearing a burglar, would not have picked up a shovel and gone out into the yard. Precisely what Lionel did, however, was subject to conflicting testimony. The jury may, for example, have thought Lionel picked up the shovel which was in his way, intending to put it down once he got outside, but, before he had a chance to do so, Fudala shot him. Credibility is a matter for the jury. Regardless, Lionel's decision

to go out into the yard does not strike us as so obviously unreasonable as to require reversal of a jury determination to the contrary. *Atlantic & Gulf Stevedores, Inc. v. Ellerman Lines,* 369 U.S. 355, 364, 82 S.Ct. 780, 786, 7 L.Ed.2d 798 (1962); *General Dynamics, Inc. v. Occupational Safety and Health Review Commission,* 599 F.2d 453, 463 (1st Cir.1979).

Nor do we believe the jury's finding against the town of Bedford on the Aubin parents' "illegal search" claim to be against the weight of the evidence. While an Aubin son gave the police permission to search the house, there was testimony that the son heard the policemen muttering what, in the circumstances, could certainly have sounded like threats. And, the jury might well have thought that the "consent" was forced, rather than freely given.

Finally, defendants object to the $300,000 verdict as excessive. Lionel Aubin was shot in the right shoulder. He has suffered a permanent ten percent disability in his right arm. He was caused considerable pain and suffering. He had medical expenses. He has had to give up any hope of a career in football (and the record suggests some likelihood of success in this field). He has had to accept employment in a restaurant earning $175 per 60 hour week; previously he had worked in construction as a heavy equipment operator who earn, the record indicates, an average of $9.79 per hour. Some of this evidence, of course, was disputed. But, the jury may have believed enough of it to award $300,-000 without "shocking" this court's "conscience." *Clark v. Taylor,* 710 F.2d 4, 13 (1st Cir.1983); *Kolb v. Goldring,* 694 F.2d 869, 871 (1st Cir.1982); *LaForest v. Autoridad de las Fuentes Fluviales,* 536 F.2d 443, 447 (1st Cir.1976).

### III

The town of Bedford and the Chief of Police object to an instruction the court gave in respect to Lionel Aubin's parallel civil rights claim against policeman Fudala. Essentially, the town and the police chief believe that the Court's instruction was too favorable to Fudala. They reason that a less favorable instruction might have led to a higher verdict against Fudala. Apparently, they feel that provisions in relevant insurance policies might have then led to a somewhat different (and more favorable) allocation of actual payments on Lionel's judgment.

Regardless, the town and the police chief were not defendants on Lionel's parallel civil rights claim. Ordinarily, one who is not a party to a claim cannot appeal a judgment on the claim. *United States ex rel. Louisiana v. Jack,* 244 U.S. 397, 402, 37 S.Ct. 605, 607, 61 L.Ed. 1222 (1917); *Ex parte Leaf Tobacco Board of Trade,* 222 U.S. 578, 581, 32 S.Ct. 833, 56 L.Ed. 323 (1911); *Securities and Exchange Commission v. An-Car Oil Co.,* 604 F.2d 114, 119 (1st Cir.1979); *Taylor v. Ouachita Parish School Board,* 648 F.2d 959, 971 (5th Cir. 1981); *In Re Proceedings before the Federal Grand Jury for the District of Nevada (United States v. Conforte),* 643 F.2d 641, 643 (9th Cir.1981). The town and police chief seem no worse off than they would have been had Lionel and Fudala settled the civil rights claim—something they surely had every right to do. *Cf. In re Viatron Computer Systems Corp. Litigation,* 614 F.2d 11, 14 (1st Cir.1980) (nonsettling defendant does not ordinarily have standing to object to court order approving partial settlement); *Smith v. South Side Loan Co.,* 567 F.2d 306 (5th Cir.1978) (attorney lacks standing to maintain appeal for his client when said client and other party to action reached settlement, even if attorney and client had entered into contingent fee agreement payable if client won on merits). Thus, without examining in detail whether or not special circumstances might sometimes allow one party to appeal an instruction that concerns another, simultaneously tried, claim against others, we find no such special circumstance here. We conclude that the town and police chief cannot raise this issue.

### IV

In their cross-appeal plaintiffs argue that the district court should not have

directed a verdict against them on their separate "conspiracy-based" civil rights claim. This claim essentially rested upon a charge that the policemen, the police chief, and the town had "conspired" or "agreed" to deprive Lionel and his relations of certain rights. In trying the claim, the plaintiffs sought to find the "agreement" or "conspiracy" in a series of post-shooting acts that (to them) suggested a cover-up of Fudala's mistake. The evidence introduced by plaintiffs designed to show the existence of the conspiracy is the following:

1. The shovel and the flashlight disappeared from the scene before the police could take measurements and photographs.

2. The police handcuffed Norman and treated him like a criminal.

3. The police searched the Aubin house.

4. Fudala told conflicting stories about what happened.

5. Superior officers sent Fudala home instead of questioning him.

6. Trooper Meaney later testified that Lionel smelled of drink despite total lack of corroboration.

7. Officials released "incorrect" and "prejudicial" information to the media.

Viewing this evidence most favorably to the plaintiffs, the issue for us is whether the trial court might reasonably have concluded that a jury could not have found for the plaintiffs without "speculation and conjecture." *Carlson v. American Safety Equipment Corp.*, 528 F.2d 384, 386 (1st Cir.1976); *Schneider v. Chrysler Motor Corp.*, 401 F.2d 549, 555 (8th Cir.1968).

■ The problem for the plaintiffs is not the propriety of the acts they cite, but, rather, whether they show *agreement*. Was there a "single plan the essential nature and general scope of which [was] known to each person who is to be held responsible for its consequences?" *Hampton v. Hanrahan*, 600 F.2d 600, 621 (7th Cir.1979) (quoting *Hoffman-LaRoche, Inc. v. Greenberg*, 447 F.2d 872, 875 (7th Cir. 1971)). At the least, did the parties decide

to act "interdependently," each actor deciding to act only because he was aware that the others would act similarly? *Compare Interstate Circuit, Inc. v. United States*, 306 U.S. 208, 59 S.Ct. 467, 83 L.Ed. 610 (1939) *with Theatre Enterprises, Inc. v. Paramount Film Distributing Corp.*, 346 U.S. 537, 74 S.Ct. 257, 98 L.Ed. 273 (1954). Most of the acts cited were performed by different individuals very shortly after the shooting. At worst for defendants (and at best for plaintiffs) they show that individual officers would have liked to help Fudala. But, to show more than that, to show an implicit or explicit *agreement* to do so, would have taken more. On this record, the trial judge could have reasonably concluded that the jury could have found the "more" only with the aid of impermissible speculation. *Carlson v. American Safety Equipment Corp.*, 528 F.2d at 386.

■ The Aubin parents argue that they should have received more than $1 nominal damages for the unlawful search of their house. In the absence of a showing that the Aubin parents suffered actual damages attributable to the search, however, a nominal damages award is proper. *Carey v. Piphus*, 435 U.S. 247, 262–67, 98 S.Ct. 1042, 1051–54, 55 L.Ed.2d 252; *Rodriguez de Quinonez v. Perez*, 596 F.2d 486, 491 (1st Cir.), *cert. denied*, 444 U.S. 840, 100 S.Ct. 78, 62 L.Ed.2d 51 (1979); *Magnett v. Pelletier*, 488 F.2d 33, 35 (1st Cir.1973); *Tatum v. Houser*, 642 F.2d 253, 255 (8th Cir.1981). The record suggests that the emotional harm that the Aubin parents suffered was brought about by their son's injury; it does not show any *additional* harm caused to them by the search. Under these circumstances, we believe that the court's limitation of damages was correct.

■ Finally, plaintiffs argue that the jury verdict against Norman Aubin was against the weight of the evidence. The matter rests upon credibility determinations—decisions about what evidence to accept. The jury might reasonably have believed that the police officers who restrained Norman did not understand the circumstances fully and believed that he

was threatening them. (This is consistent with Norman believing he was responding reasonably to the shooting of his brother.) The jury might also have believed that the police officers removed the handcuffs once they found out that Norman lived in the Aubin house and that Norman voluntarily acompanied them to the police headquarters. Viewed in the light most favorable to defendants, the evidence supports the jury's verdict.

Appellants' other arguments are without merit.

The judgments of the district court are all

*Affirmed.*