James J. COLLINS and Mary T. Collins, Plaintiffs,

v.

EX–CELL–O CORP., and Ex-Cell-O Materials and Handling Co., Defendants.

Civ. A. No. 83–4018–Y.

United States District Court, D. Massachusetts.

Feb. 28, 1986.

---

Robert S. Potters, Nix & Potters, Boston, Mass., for James J. and Mary T. Collins.

William Dailey, Sloane & Walsh, Robert Gaynor, Boston, Mass., for Ex-Cell-O Corp. Co.

MEMORANDUM AND ORDER ON THE MOTION OF THE PLAINTIFFS FOR A NEW TRIAL

YOUNG, District Judge.

In *West v. Sears Roebuck & Co.*, 780 F.2d 169, 170 (1st Cir.1986), Judge Wyzan-

---

**1.** Any dispute as to this conclusion was ended by the Appeals Court's dismissal of the appeal.

ski, speaking for the court, has this to say about the jury charge of one of our colleagues, a former justice of the Massachusetts Superior Court:

> [H]e gave what may best be characterized as the customary Massachusetts trial judge's ambulatory charge rambling over the broad areas of duty, standard of care, breach, causation, and damages—the unfortunately familiar set of possible generalizations not likely to lead to an appellate reversal.

With respect, while Judge Wyzanski's dictum has much merit, it tells but part of the story. The Massachusetts Superior Court has a proud tradition of actually *teaching* jurors the applicable law prior to their deliberations.[1] Surely, jury charges are more than a mere recitation of succinct though possibly abstruse legal principles. While such a dry recital will also pass appellate muster, it is sometimes little better than talking to the jury in Swahili. Indeed, in complex civil rights actions, for example, there may be an express duty to elaborate the meaning of controlling legal standards in terms of the particular facts of the case. *Aubin v. Fudala*, 782 F.2d 280, 283 (1st Cir.1983); *Choy v. Bouchelle*, 436 F.2d 319, 325 (3rd Cir.1970); *Lessig v. Tidewater Oil Co.*, 327 F.2d 459, 466 n. 13 (9th Cir.1964); *United States v. 145.31 Acres of Land*, 54 F.R.D. 359, 361 (M.D.Pa. 1972). *See Kibbe v. City of Springfield*, 777 F.2d 801, 810 (1st Cir.1985) where the court called for more "detailed" instructions in a civil rights action.

The risks of a long, illustrative charge are, however, fairly obvious. The jury may become bored and allow their minds to wander. *See generally* A. Austin, *Complex Litigation Confronts the Jury System: A Case Study*, 55 et seq. (Univ.Pub. 1984). Illustrations, while they may bring legal principles to life for jurors, may also convey nuances at variance either with the issues presented by the case or with the principle being illustrated. It does no good if the illuminating touches in a jury charge fail to throw specific principles into bold relief and instead, blur the whole. The trial judge is constantly required to be comprehensively brief, perhaps the most daunting oxymoron in the law. The judge must be understood by lay jurors while delineating complex legal norms with scrupulous accuracy. It is the most challenging law teaching of our time.[2]

This said, I must ruefully admit that my charge in the present case is an apt exam-

---

1. Foremost among the exponents of the full scale, illustrative, meticulously crafted jury charge in Massachusetts is the Honorable George Ponte. It would be hard to overstate his influence on Massachusetts Superior Court jury charges. After all, in the 127 year history of that court, more lawyers who have associated in legal practice with George Ponte have been called to the bench than from any other single source, including the major Boston law firms. Moreover, his copious, constantly updated trial notebooks are the primary foundation of the Superior Court jury chargebook and have thus influenced all members of that court. Mention ought also be made of the Honorable George Hayer who taught many of his colleagues (myself included) how to organize and deliver a logical, comprehensive, and understandable jury charge. I acknowledge my enormous debt to both these superb jurists.

2. Significantly, however, on every court there seem to be judges who are masters of the art of jury charging. Too often, their skills are transmitted only by word-of-mouth. For some scholarly reflection on the craft of teaching the jury the law, *see* W. Schwarzer, "Communicating with Juries: Problems & Remedies." 69 Calif.L. Rev. 731 (1981) and "Jury Instructions: We Can Do Better," 8 Litigation 5(5) Winter, 1982. For practical help, *see Manual of Model Jury Instructions for the Ninth Circuit*, (West Pub. Co. 1985) and *Pattern Jury Instructions: Criminal Cases* (U.S. Eleventh Circuit District Judges Association, West Pub. Co. 1985). One of Judge Schwarzer's most helpful techniques for enhancing the jurors' understanding is to charge the jury substantively *before* the arguments of counsel rather than the traditional sequence. This tends to sharpen the arguments of counsel and illuminate the application of legal principles to the evidence. This salutory practice is gaining acceptance in this District and in the Commonwealth of Massachusetts as well. *See, e.g. Lakian v. The Globe Newspaper Co.*, Norfolk Superior Court No. 137472, where the Honorable George Jacobs, Associate Justice of the Massachusetts Superior Court, charged the jury prior to the arguments of counsel.

ple of Judge Wyzanski's comment in *West.* For that reason, the plaintiffs concentrate their main attack on the charge in seeking to overturn a jury verdict for the defendants and obtain a new trial. After careful reflection, I have determined that the charge was adequate and the motion for a new trial ought be denied.

■ First, the plaintiffs claim that in discussing the breach of warranty claim, my reference to "how feasible, having in mind when the machine was made and what conditions existed then, how feasible, that is, how could you have done it in [sic] any safer alternative?",[3] mis-stated the law of Massachusetts as declared in *Hayes v.*

*Ariens,* 391 Mass. 407, 413, 462 N.E.2d 273 (1984) where the Supreme Judicial Court declared, "The state of the art is irrelevant" to a breach of warranty claim.

There was no error. The court carefully distinguished the negligence assessment (what the reasonable manufacturer should have known and done "at the time the item was manufactured and sold") from the warranty assessment (i.e. whether the jury, with the benefit of hindsight, considered the item reasonably safe for its intended purpose). In this context, the reference to what was "feasible" was correct. I fully agree with the reasoning of Judge Zobel in *In re Massachusetts Asbestos Cases* (Pre-

---

3. In context, I charged the jury:

Now, the second theory is what we call a breach of warranty theory. Under the breach of warranty theory it has a different background. It grows out of our law of contracts, our law of the sale of goods. And it is the law that everyone who markets a product, whatever that product is, in the circumstances of this case, the manufacturer, Ex-Cell-O, warrants, that is another way of saying they promise, that their product is reasonably fit for the ordinary purposes for which it is to be used. That's a promise that goes with the sale of any item and it goes with the sale of this dollyizer. And it runs to anyone who may come in contact, not just the Hood people who bought it, but anyone who may come in contact with this piece of machinery. That the product is reasonably fit for the ordinary purposes for which it was designed.

Now, those ordinary purposes include those purposes for which the manufacturer intended the product to be used as well as all those which are reasonably foreseeable. The fitness of a product is dependent largely, though not exclusively, on the reasonable expectations of those people who come in contact with the product. What they have purchased it for, or if they're working with it, what they expect it will do.

Now, the first question then under the breach of warranty theory is: Was this dollyizer reasonably fit for the ordinary purposes for which it was intended? And that doesn't simply mean did it put milk on dollies, it also means was it reasonably safe for the ordinary purposes for which it was being used? Mr. Collins has to prove—that's his first point that he has to prove under this theory—that it was, again by a fair preponderance of the evidence, that it was not reasonably safe and instead that it was unreasonably dangerous. And in this respect you may consider much the same

aspects of the issue that I've already mentioned under negligence. You may consider the adequacy of the warnings; the adequacy of whatever guarding materials were around it; the adequacy of the design with respect to the switches and the like about how it worked. And the question is: Was it reasonably fit or was it unreasonably dangerous?

Now, the difference—why am I going over this separate theory? The difference between the two theories is that in the first theory, negligence, we really got interested in whether someone was careless or at fault, having in mind what the reasonable manufacturer should have known or should have done at the time that the item was manufactured and sold. You will recall what I said about that.

Breach of warranty is a little different. Under the law of breach of warranty, what you consider in that respect is you consider things like this. But you consider them after the fact. And what I want to impress upon you is you are the judges of whether that machine is reasonably fit. As you look back on it today you are the judges of that. Was it reasonably fit for the purposes for which it was intended or was it unreasonably dangerous. And you may consider things such as this. How serious were the dangers posed by the manner in which this machine was designed? How likely was it that someone would be injured in the use of this machine? How feasible, having in mind when the machine was made and what conditions existed then, how feasible, that is, how could you have done it in any safer alternative? Were the materials, were the skills available to have done it some way? How much would it have cost to have an improved design? Was that financially unreasonable? And what consequences to the people who used the product would result from the manner in which it was designed? You are the judges of those matters.

trial order of February 26, 1985 at 5–9) that the dictum in *Hayes*—for that is what it is—announces no changes in the Massachusetts law that the feasibility of alternative and possibly safer designs is a relevant inquiry in the warranty context. *See Back v. Wickes Corp.*, 375 Mass. 633, 642, 378 N.E.2d 964 (1978).

Second, while it is true that the negligence of Hood, the plaintiff James Collins' employer, would not serve to affect the defendants' liability in any way unless Hood alone was the cause of the injury, *Correia v. Firestone Tire & Rubber Co.*, 388 Mass. 342, 352, 446 N.E.2d 1033 (1983), the charge adequately expressed that concept and those of proximate and superseding cause. The question on this motion for a new trial is whether there is a reasonable risk of a miscarriage of justice, "not whether an instruction was faultless in every respect, but whether the jury, considering the instruction as a whole, was misled." *Aubin v. Fudala, supra* at 284, quoting *Mid-Texas Communications Systems, Inc. v. American Telephone and Telegraph Co.*, 615 F.2d 1372, 1390 n. 15 (5th Cir. 1980), *cert. denied sub nom. Woodlands Telecomunications Corp. v. Southwestern Bell Telephone Co.*, 449 U.S. 912, 101 S.Ct. 286, 66 L.Ed.2d 140 (1980). I am satisfied that the jury was not here misled.

Nor is my single inadvertent reference to "Hood" when I meant "Collins" grounds for a new trial. In context, I am satisfied the jury understood the meaning to refer to the plaintiff James Collins as intended. "When instructions, taken together, properly express the law applicable to the case, there is no error even though an isolated clause may be inaccurate, ambiguous, incomplete or otherwise subject to criticism." *Aubin v. Fudala, supra* at 284, quoting *Johnson v. Bryant*, 671 F.2d 1276, 1280 (11th Cir.1982).

For these reasons, the motion for a new trial ought be, and hereby is, DENIED.