**[NOT FOR PUBLICATION--NOT TO BE CITED AS PRECEDENT]**

# United States Court of Appeals
# For the First Circuit

No. 01-1580

WILLIAM T. HAMILTON,

Plaintiff, Appellant,

v.

JOAN E. ARNOLD

Defendant, Appellee.

APPEAL FROM THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF MASSACHUSETTS

[Hon. Nathaniel M. Gorton, U.S. District Judge]

Before

Boudin, Chief Judge,

Rosenn*, Senior Circuit Judge,

and Lipez, Circuit Judge.

Edward Greer for appellant.
Brent A. Tingle with whom Joseph A. Seckler was on brief for
appellee.

January 23, 2002

_____

**Per Curiam.** This litigation is a continuation of a lengthy marital campaign waged in the Massachusetts state courts. After eleven years of marriage and the birth of three children, Janet Guy-Hamilton sued her husband, William T. Hamilton (Hamilton) for divorce in the Worcester County Probate and Family Court in Massachusetts. After a protracted and contentious trial, the presiding judge, Arline Rotman, granted the divorce. The judge awarded joint legal custody of the children, the central issue in the suit, to both parents, with physical custody to the mother. The judge also ordered the father to pay child support and directed that he pay $10,000 toward his former wife's legal fees, because the judge found that Hamilton had needlessly protracted the litigation.

Hamilton appealed to the Massachusetts Appeals Court. That court affirmed the judgment of the county court. In its decision, the appellate court noted that Hamilton appealed from "every significant aspect" of the judgment of divorce entered by the Worcester Probate and Family Court. The appellate court's review of the record and arguments of the parties convinced it that the appeal lacked merit. Hamilton petitioned the Massachusetts Supreme Judicial Court for leave to obtain further review. On July 24, 1995, the Supreme Judicial Court denied both the petition for review and a motion for reconsideration.

While the appeals and petition for review were pending in the Massachusetts appellate courts, the Massachusetts Commission on Judicial Conduct conducted an investigation of a complaint concerning the improper assignment of the judge to the divorce suit, because of her friendship with Joan Arnold (Arnold), the attorney for Mrs. Hamilton. The Commission issued its findings on April 25, 1995, announcing that the claims had been investigated, computer records analyzed, many witnesses interviewed and the court files reviewed, and that the complainant's allegations were unsubstantiated.

Following the bitter, hard-fought and lengthy divorce proceedings in the state courts, Hamilton resourcefully filed this action in the United States District Court for the District of Massachusetts. In his complaint as amended, he alleged that the defendant, Arnold, the attorney who represented his former wife in their divorce proceedings, conspired with the presiding judge in that lawsuit to deprive Hamilton of his constitutional right to a fair divorce trial, in contravention of 42 U.S.C. § 1983. The plaintiff seeks compensatory and punitive damages. The district court denied Arnold's motion to dismiss the complaint, finding it "marginally sufficient to state a claim." After extensive discovery extending over eighteen months, the

-4-

district court granted the defendant's motion for summary judgment. Hamilton timely appealed. We affirm.

Although Hamilton specifically finds fault with several of the district court's findings of fact, his basic contention is that the district court erred in granting summary judgment because there is a genuine issue of material fact that must be submitted to the jury. As Hamilton contends, this court exercises de novo review over the district court's granting summary judgment. Guzman-Rivera v. Rivera-Cruz, 29 F.3d 3, 4 (1st Cir. 1994). Summary judgment is only appropriate if "the record discloses no trialworthy issue of material fact and the moving party is entitled to judgment as a matter of law." Alexis v. McDonald's Rests. Inc., 67 F.3d 341, 346 (1st Cir. 1995). The record must be viewed in the light most favorable to the nonmoving party. Griggs-Ryan v. Smith, 904 F.2d 112, 115 (1st Cir. 1990). All reasonable inferences must be accepted in favor of the nonmoving party. Id.

Hamilton argues that the evidence, when viewed in the light most favorable to him, is sufficient for a reasonable jury to infer a conspiracy and that summary judgment therefore was inappropriate. Because the sine qua non of a conspiracy, the agreement, is exceedingly difficult to prove directly, it usually must be inferred from the circumstances. Earle v.

Benoit, 850 F.2d 836, 843 (1st Cir. 1988).  Indisputably, there is no proof of any explicit agreement on the part of the judge in the divorce proceedings and Arnold to unlawfully grant a favorable divorce decree to the former Mrs. Hamilton.  The question for this court is whether the evidence Hamilton adduced is sufficient for a reasonable jury to find a conspiracy "'without speculation and conjecture.'"  Id. at 844 (quoting Aubin v. Fudala, 782 F.2d 280, 286 (1st Cir. 1986)).  Hamilton asserts that it was.  The district court held that it was not.

Hamilton forcefully argues that the due process clause of the Fourteenth Amendment guarantees him "an impartial and disinterested tribunal" in his divorce proceeding.  Marshall v. Jerrico, Inc., 446 U.S. 238, 242 (1980).  Therefore, trials require an absence of actual bias.  In re Murchison, 349 U.S. 133, 136 (1955).  Redress for such a violation is available under 42 U.S.C. § 1983 when the constitutional right is violated under color of state law.  A private attorney who conspires with a state judge is within § 1983's purview.  Casa Marie, Inc. v. Superior Court, 988 F.2d 252, 258-59 (1st Cir. 1993).  Because judges generally enjoy absolute immunity from suits for money damages, Mireless v. Waco, 502 U.S. 9 (1991), the plaintiff did not name Judge Rotman as a party defendant.

-6-

Because the facts accumulated in the related proceedings are very extensive, the plaintiff has reduced them to six categories, each disputed by the defendant. Hamilton argues that drawing all reasonable inferences therefrom in his favor, they establish genuine issues of material fact in dispute sufficient to preclude summary judgment. The categories as stated by him are:

1. evidence of signaling in the courtroom between the defendant and the presiding judge associated with skewed evidentiary rulings;
2. evidence of improper ex parte meetings between Joan Arnold and the judge, as suggested by the defendant's regular presence in the judge's chambers;
3. evidence of improper ex parte communications between the defendant and the judge, as demonstrated by judicial comments on "grandparent intermeddling;"
4. the judge's improper award of reverse attorney's fees to the defendant without any proof whatsoever of time expended;
5. the defendant's and the judge's denials, during discovery, of maintaining a friendship and socializing with one another, which were contradicted by multiple witnesses and documentary evidence; and
6. testimonial and statistical evidence demonstrating that, contrary to the random judicial assignment system in effect, Arnold tried the vast majority of her contested cases before the presiding judge, rather than appearing randomly before all three judges of the Worcester Probate Court, and had an unusually favorable record with the presiding judge in the Hamilton case.

The district court here, viewing the evidence in the light most favorable to Hamilton, found that Judge Rotman and the defendant were close personal friends who frequently associated with one another. He also found that "they

-7-

improperly flaunted their friendship" and may have engaged in other inappropriate conduct that gave the appearance of a potential conflict of interest. D.C. op. at 9. However, the court held that the obvious friendship and appearance of impropriety did not, without more, "constitute circumstantial evidence of an express or implicit agreement to deprive Hamilton of a fair proceeding." Id.

At oral argument, Hamilton's counsel stressed as "overwhelming" and "powerful" the statistical evidence Hamilton adduced. Hamilton claims the statistical evidence proves that the judge and the defendant manipulated the trial assignments in the Worcester Probate Court so that Arnold appeared disproportionately often in front of Judge Rotman. Hamilton himself gathered the statistics by searching the Worcester County Probate Court's records. Because assignments were random, Hamilton assumed that the defendant should have appeared before two of the court judges about an equal number of times. Hamilton discovered that in *open court appearances* Arnold appeared before Judge Rotman 120 times, and before her colleague, Judge Lian, 37 times. Although on the surface this disparity appears striking, it is less so when examined in the context of actual cases: Judge Rotman was assigned to 36 of Arnold's cases, while Judge Lian was assigned to 23. This 3:2

ratio is hardly eye-opening, and could result from nothing more than a simple stroke of circumstance. Moreover, assuming arguendo that Arnold's cases were not randomly assigned, there is no evidence inculpating Arnold in any manipulation. Such chicanery can only be inferred through conjecture and speculation, which are not acceptable bases for finding a conspiracy.

Hamilton's other evidence is similarly unconvincing. There are witnesses who testified that the defendant had at times been seen in Judge Rotman's chambers, but no witnesses saw them there together during the trial. Hamilton also argues that Judge Rotman's admonition to Hamilton's parents about denigrating his former wife in front of their children must have been the result of *ex parte* communications between the defendant and the presiding judge. However, divorces are often bitter, as was this one, and children are often used as pawns by one or both parents. The caution to the grandparents is more likely an expression of sound advice rather than the result of an *ex parte* communication.

Hamilton further asserts that there was improper signaling, such as winks and nods, between the judge and Arnold while he was testifying. Hamilton submitted affidavits from witnesses who, in other cases, claimed to have seen similar

signaling between the judge and the defendant. Such behavior, if it occurred, is not to be condoned, but without more it is not evidence of a conspiracy. The alleged winks and nods in an open court between the judge and a lawyer in a case at trial is wholly inconsistent with a clandestine conspiracy to subvert the trial. Hamilton alleges that the signaling was followed by "skewed" evidentiary rulings from the judge, but he has not drawn our attention to anything specific or insidious.

The issue here is not the apparent impropriety of some of the actions of the judge and Arnold in the divorce proceedings, but whether such impropriety proves a conspiracy depriving Hamilton of his right to a fair and impartial trial. Hamilton challenged that conduct in the Massachusetts Court of Appeals and that court found it unsubstantiated. We have carefully reviewed the record and briefs with respect to all the allegations. We are satisfied that no reasonable jury could have found a conspiracy between the judge and this defendant on the speculative evidence presented by Hamilton, even giving him the benefit of all inferences. Thus, we see no error in the district court's finding that "[t]here is simply no evidence of any ex parte communications regarding Hamilton's divorce case, much less of an agreement to deprive him of a fair divorce proceeding." (D.C. op. at 9).

-10-

**Affirmed.**  Costs taxed against the appellant.