James Dale LOVE, Plaintiff-Appellant,

v.

George KING, Individually and as Chief of Police, et al., Defendants-Appellees.

Susan PRITCHARD and Kim Phelps, Plaintiffs-Appellants,

v.

Carl ZEAGLER, et al., Defendants-Appellees.

No. 85–4284
Summary Calendar.

United States Court of Appeals, Fifth Circuit.

March 12, 1986.

Patrick Durusau, Jena, La., for James Dale Love.

Gold, Little, Simon, Weems & Bruser, Henry B. Bruser, III, Alexandria, La., for King and Town of Jena.

Hennigan & Walters, Lloyd E. Hennigan, Jr., J. Reed Walters, Jena, La., for Carl Zeagler.

Before GEE, REAVLEY and ROBERT MADDEN HILL, Circuit Judges.

REAVLEY, Circuit Judge:

Plaintiffs Dale Love, Susan Pritchard, and Kim Phelps brought action against the Town of Jena, George King, Jena's Chief of Police, and Carl Zeagler, a private citizen, under 42 U.S.C. §§ 1983, 1985 and 1986 (1982). The plaintiffs alleged that their constitutional rights were violated during an incident in which Zeagler shot his wife and plaintiff Love after finding the two in bed together. The trial court directed verdicts in favor of all defendants at the close of trial, and plaintiffs now appeal. We affirm.

## FACTS

The events which led to the alleged violations of plaintiffs' constitutional rights began on the afternoon of Tuesday, February 15, 1983, when Mrs. Zeagler left home after an argument with her husband. She went to see her friend, Susan Pritchard, and the two began drinking wine at Pritchard's home. A short time later, the two women were joined by Dale Love and another woman. The group left the Pritchard residence and went first to a shopping mall and then to a hotel lounge, where they remained until the lounge closed. After leaving the lounge, Love and Mrs. Zeagler moved Mrs. Zeagler's car from its location near a school to a location behind a doctor's office; they then returned to Pritchard's house, where they remained together until the next morning.

Apparently, Carl Zeagler had learned or discovered that his wife was at the Pritchard residence because about nine o'clock that same morning he approached the local sheriff and asked the sheriff to accompany him to the Pritchard residence to get evidence for a divorce. The sheriff refused. Zeagler then approached off-duty police officer Ronnie Burgess and offered him $500 to go to the Pritchard residence. Burgess also refused. Burgess reported his conversation with Zeagler to Police Chief King and, shortly after Burgess' report, Zeagler stopped King in his patrol car and also asked him to go to the Pritchard residence. Zeagler was obviously agitated and, when King refused (according to his undisputed testimony), Zeagler said that he would take care of things himself and left.

Fearing that Zeagler might create a disturbance, King decided to go to the Pritchard residence and asked Burgess to accompany him. They arrived at the Pritchard house, determined that Zeagler was not there and decided to wait in a nearby parking lot. They did not tell anyone at the house of Zeagler's possible arrival. Within minutes Zeagler appeared, and the officers followed him to the residence in their vehicle. Zeagler quickly entered the yard, stepped on the front porch and attempted to open the front door. At the same time, King got out of the patrol car and shouted at Zeagler to stop. When Zeagler ignored him, King began to proceed toward the house.

At this point, the exact sequence of events begins to blur. Apparently, when King began to approach the house, Zeagler jumped off the front porch and ran around the corner of the house. He broke a window, climbed into the house and subsequently struck Kim Phelps, Pritchard's daughter, and shot Love twice and his wife once. The wounds were not fatal.

When Zeagler first bolted off the front porch, King and Burgess began to pursue him around the corner of the house. At the sound of breaking glass, however, they stopped; King instructed Burgess to call

for a back-up and, while he was doing so, King proceeded to the front door. As he reached the front porch, Mrs. Pritchard, apparently fleeing Zeagler, opened the front door. King was in the process of entering the house when he heard the three shots. Running through the house, he found Zeagler and persuaded him to surrender the gun.

Love, Pritchard and Phelps subsequently brought action under 42 U.S.C. §§ 1983, 1985, and 1986 against the Town of Jena, Chief King and Zeagler. They alleged that King had agreed to meet Zeagler at the Pritchard residence and that the two had thus conspired to violate plaintiffs' constitutional rights. They further alleged that King violated their constitutional rights because he negligently failed to prevent Zeagler from getting into the house. Finally, they alleged that the Town of Jena was liable because King's actions represented a municipal policy or custom. After trial before a jury, the district court granted defendants' motions for directed verdicts, concluding that there was no evidence of a municipal policy or custom, a conspiracy, or violation of plaintiffs' constitutional rights.

## DISCUSSION

■ Before considering the plaintiffs' points of error on appeal, we note briefly our standard of review as stated in *Boeing Co. v. Shipman*, 411 F.2d 365 (5th Cir. 1969). The essence of a motion for directed verdict is that there is no genuine issue of material fact and that the moving party is entitled to a judgment on the law applicable to the established facts. According to *Boeing*, on a motion for directed verdict, a court should consider all the evidence—not just evidence supporting the non-movant's case—in the light and with all reasonable inferences most favorable to the non-moving party. If the facts and inferences point so strongly and overwhelmingly in favor of one party that reasonable minds could not arrive at a contrary conclusion, the motion should be granted. A mere scintilla of evidence is insufficient to present a question for the jury. *Id.* at 374–75.

### I. *The Town of Jena*

■ Plaintiffs first assert that the district court erred by directing a verdict in favor of the Town of Jena. We do not agree. The district court directed a verdict in favor of Jena based on its conclusion that "the record is absolutely bare of any evidence that th[e] random act by [Police Chief King] in any way represented any policy adopted formally or by repeated use by the City (sic) of Jena." T.R. 330. Relying on *Brewer v. Blackwell*, 692 F.2d 387 (5th Cir.1982), plaintiffs argue, however, that "a municipality is vicariously liable for torts of its officers." We reject this argument because it represents a complete misunderstanding of the basis of municipal liability as stated by the Supreme Court and as applied by this court in *Brewer*.

In *Monell v. Department of Social Services*, 436 U.S. 658, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978), the Supreme Court held that a municipality is liable under § 1983 for acts of its employees or agents *only* when an official acts at the direction of the municipality or pursuant to a municipal policy or custom. The Court specifically held that a municipality is *not* vicariously liable for the acts of its employees, stating that "a local government may not be sued under § 1983 for an injury inflicted solely by its employees or agents." *Id.* at 694, 98 S.Ct. at 2037, 56 L.Ed.2d at 638.

In *Brewer*, the plaintiff brought suit against a municipality under § 1983 and state tort law for the allegedly injurious acts of its police chief. We reversed a directed verdict in favor of the municipality on the *pendent state tort claims* because *Louisiana law* permits vicarious municipal liability for police officers' torts. We did not, however, hold that the city was vicariously liable under § 1983. Instead, we applied the Supreme Court's clear statement of municipal liability in *Monell* and upheld a directed verdict on the § 1983 claim in favor of the municipality because there was no evidence that the police chief's acts

represented municipal policy. *Brewer*, 692 F.2d at 400–01. Plaintiffs misread *Monell* and *Brewer* and ignore numerous lower court decisions. *See, e.g., Young v. City of Killeen*, 775 F.2d 1349 (5th Cir.1985); *Bennett v. City of Slidell*, 728 F.2d 762 (5th Cir.1984) (en banc), *cert. denied*, — U.S. ——, 105 S.Ct. 3476, 87 L.Ed.2d 612 (1985); *Familias Unidas v. Briscoe*, 619 F.2d 391 (5th Cir.1980).

Although plaintiffs did not reach the issue, we note further that the district court correctly concluded that there was no evidence of a municipal policy or custom relating to Chief King's actions. There was no evidence at trial that King's actions were undertaken pursuant to a previously determined city policy or to a general practice of the police department. There was no prior or subsequent ratification of his acts by the Town's policymaker—the Board of Aldermen. Finally, there was no evidence that King, in his capacity as police chief, acted as final authority for the municipality such that his conduct could fairly be said to represent official policy. The district court correctly directed a verdict in favor of the Town of Jena.

## II. *The Zeagler/King Conspiracy*

Plaintiffs next contend that the district court erred in finding no evidence of a conspiracy between defendants Zeagler and King. We disagree. In support of their conspiracy claim, plaintiffs point to several facts: the brief conversation between King and Zeagler, King's wait for Zeagler outside the Pritchard residence, and minor inconsistencies in the testimony regarding the sequence of events which occurred after Zeagler's arrival at the Pritchard residence. From these facts, plaintiffs raise a series of speculative questions asking us to draw from these questions an inference of conspiracy.

While we are required to draw inferences favorable to plaintiffs, such inferences must be "within the range of reasonable probability." *Radiation Dynamics, Inc. v. Goldmuntz*, 464 F.2d 876, 887 (2d Cir.1972) (quoting *Ford Motor Co. v. McDavid*, 259 F.2d 261, 266 (4th Cir.), *cert. denied*, 358 U.S. 908, 79 S.Ct. 234, 3 L.Ed.2d 229 (1958)). When the necessary inference is so tenuous that it rests merely upon speculation and conjecture, it is the duty of the court to withdraw the case from the jury. *Id.* In view of Chief King's direct and unimpeached testimony that he did not agree to go with or meet Zeagler at the Pritchard residence and in view of the complete lack of any other direct evidence of a conspiracy, it is simply too speculative to draw an inference of conspiracy from the facts in this case. The district court therefore correctly directed a verdict in favor of defendants Zeagler and King on the issue of conspiracy.[1]

## III. *Chief King's Liability*

Finally, plaintiffs assert that the district court erred when it directed a verdict in favor of Chief King on plaintiffs' § 1983 claim which alleged that King's negligence deprived them of their constitutional rights. We note initially that plaintiffs do not challenge the district court's conclusions that King did not violate plaintiffs' Fourth Amendment rights, right to privacy and right to procedural due process. Thus, we do not need to discuss our agreement with the district court on those issues. Instead, we will address only plaintiffs' challenge of the district court's conclusion that King did not negligently deprive them of liberty without due process. While we uphold the directed verdict in King's favor on this issue, we do so under a legal analysis different from that of the district court.

The district court began its analysis by noting that plaintiffs "alleged that they were negligently deprived of liberty without due process of law." T.R. 334. Apparently accepting the proposition that negli-

---

1. The district court, after concluding that there was no conspiracy, also directed a verdict in favor of Carl Zeagler on any § 1983 claims against him. Since he was a private citizen, not a state officer, Zeagler could not be held liable under § 1983. Plaintiffs did not challenge this action by the trial court.

gent deprivations of liberty are actionable under § 1983, the court then examined the evidence presented at the trial regarding Chief King's actions and concluded that "King acted reasonably and properly under the circumstances and that no reasonable jury could find otherwise." T.R. 336.

■ In their brief, plaintiffs reassert that "negligence can certainly form the basis for liability under 42 U.S.C. § 1983," and argue vehemently that the district court's conclusion that King was not negligent in failing to prevent Zeagler from entering the Pritchard house was error because reasonable men could differ over such a conclusion. We agree with plaintiffs that a reasonable jury could conclude that Chief King negligently failed to prevent Zeagler from entering the Pritchard residence.[2] Reversing the district court on this point, however, is not much help to plaintiffs because the negligent[3] acts of a government official are not actionable under a § 1983 claim alleging that such acts violated an individual's due process rights contained within the Fourteenth Amendment.

The alleged deprivations of plaintiffs' rights raise a question of substantive due process.[4] *See* Wells & Eaton, *Substantive Due Process and the Scope of Constitutional Torts*, 18 Ga.L.Rev. 201 (1984). The Fifth Circuit relies on an "abuse of power" test to determine whether a plaintiff proves a substantive due process deprivation in a § 1983 claim brought under the Fourteenth Amendment. For example, in *Rankin v. City of Wichita Falls*, 762 F.2d 444 (5th Cir.1985), this court recently stated that in order to maintain a § 1983 claim under the Fourteenth Amendment "one must allege 'the sort of abuse of government power that is necessary to raise an ordinary tort by a government agent to the statu[r]e of a violation of the Constitution.'" *Rankin*, 762 F.2d at 447, (quoting *Hull v. City of Duncanville*, 678 F.2d 582, 584 (5th Cir. 1982) (quoting *Williams v. Kelley*, 624 F.2d 695, 697 (5th Cir.1980))). *See also Coon v. Ledbetter*, 780 F.2d 1158, 1164 (5th Cir. 1986). As the Fifth Circuit has stated the test, mere negligence is insufficient to establish an abuse of power by a state official in the context of the Fourteenth Amendment: such conduct, by itself, does not violate an individual's substantive due process rights.[5] *See Rankin* 762 F.2d at 447–48; *Coon*, at 1164.

---

**2.** Such a conclusion could be based on several facts. King was certainly aware of the possibility of a disturbance and thus that the occupants of the Pritchard house were in some danger. Yet, he never warned or notified anyone at the house of the possibility of trouble, and he did not take any action to stop Zeagler when he was in the Pritchard's front yard. Finally, a reasonable jury could conclude that King did not react quickly enough when Zeagler ignored his command to stop.

**3.** Although plaintiffs at one point in their brief characterize negligence as callous and reckless disregard, we will assume that this was mere inadvertence and that plaintiffs really understand negligence in the traditional sense of failing to exercise reasonable care.

**4.** The district court also apparently treated the plaintiffs' claims as involving substantive due process as it distinguished the claims from a procedural due process claim. Substantive due process traditionally involves a determination that the substantive content of state or federal legislation is incompatible with the Constitution regardless of the procedures used to implement it. The underlying rationale is that there are certain types of government activity which are incompatible with individual rights as set forth in the Constitution. Similarly, in some § 1983 claims, as here, the question is not whether a government official employed proper procedures in taking action which allegedly injured a person; rather, the question is whether the official's action improperly (unconstitutionally) impinged on an individual's right to personal autonomy to the extent that that autonomy is guaranteed by the Constitution. *See also, Gilmere v. City of Atlanta*, 774 F.2d 1495 (11th Cir.1985) (en banc) (recognizing § 1983 substantive due process claim).

**5.** This substantive due process claim brought under the Fourteenth Amendment must be distinguished from a claim brought under a particular substantive right enumerated in the Bill of Rights and applied to the states through incorporation into the Due Process Clause of the Fourteenth Amendment. Although the latter claim still asserts an abuse of power, the underlying constitutional right may be deprived by official conduct comparable to lack of due care. *See Daniels v. Williams*, —— U.S. ——, 106 S.Ct. 662, 666, 88 L.Ed.2d 662 (1986) (lack of due

The Supreme Court has announced this test recently in the companion cases of *Daniels v. Williams*, —— U.S. ——, 106 S.Ct. 662, 88 L.Ed.2d 662 (1986) and *Davidson v. Cannon*, —— U.S. ——, 106 S.Ct. 668, 88 L.Ed.2d 677 (1986). The Court stated in *Davidson* that "the protections of the Due Process Clause, whether procedural or substantive, are just not triggered by lack of due care." *Davidson*, at ——, 106 S.Ct. at 671. As the Court put it, "lack of care simply does not approach the sort of abusive government conduct that the Due Process Clause was designed to prevent." *Id.* at ——, 106 S.Ct. at 670.

The courts have not yet given definition to the concept of abuse of power. *See, e.g., Coon*, at 1164 (noting the "relatively abstract and sometimes uncertain distinction between simple negligence and deprivation of constitutional right"). Many courts have simply applied common law tort principles to the concept of abuse of government power holding that, while simple negligence is not actionable under § 1983, gross negligence, recklessness, callous indifference or intentional conduct are. Commentators have also suggested various standards which rely in part on common law tort principles. *See, e.g., Wells & Eaton, supra*, at 236. While terms applicable to common law torts may help to determine what type of conduct constitutes abuse of power, use of such terms can be misleading. *See Rankin*, 762 F.2d at 447–48 ("some degree of government fault is necessary ... [but] to predicate liability under section 1983 totally on the mere degree of fault would be to convert the due process clause into an ordinary tort statute"). Such terms state only a standard of care. They do not take into account the exact responsibilities of a particular official or his power to take certain actions. Moreover, it does not take into account the nature and types of discretion which different government officials must be allowed to exercise

care does not implicate the Due Process Clause of the Fourteenth Amendment, but there may be "other constitutional provisions that could be violated by mere lack of care"). *See also Lovell v. Brennan*, 728 F.2d 560, 564 (1st Cir.1984)

if they are to have the freedom to carry out their duties without undue interference. Considerations such as these should be part of any definition of abuse of power.

We are not required to undertake here a comprehensive analysis of what constitutes an abuse of power, either in general terms or as specifically applied to the acts of a policeman faced with potential criminal action. We do conclude, however, that while a reasonable jury might conclude that Chief King was negligent, his conduct could not be characterized by any reasonable jury as an abuse of his power as a policeman. Thus, the directed verdict in favor of Chief King was proper.

AFFIRMED.

(prison officials have an obligation under the Eighth Amendment "to exercise reasonable care to provide reasonable protection [to inmates] from an unreasonable risk of harm" from other inmates).