Margaret LOPEZ, Individually and as
Next Friend of John Adam Lopez,
Plaintiff-Appellant,

v.

HOUSTON INDEPENDENT SCHOOL
DISTRICT, et al.,
Defendants-Appellees.

No. 86–2569.

United States Court of Appeals,
Fifth Circuit.

May 26, 1987.

Larry Watts, Houston, Tex., for plaintiff-appellant.

M. David Frock, Douglas W. Lyons, Jr., Bracewell & Patterson, Jeffrey J. Horner, Kelly Frels, Houston, Tex., for defendants-appellees.

Before POLITZ, JOLLY, and HIGGINBOTHAM, Circuit Judges.

PATRICK E. HIGGINBOTHAM, Circuit Judge:

Margaret Lopez, as next friend of John Adam Lopez, appeals from summary judgment dismissing claims under 42 U.S.C. § 1983 and pendent state claims against the Houston Independent School District and the individual defendants, Charles Bradford, Richard House, and Clifford Kelton, sued both in their individual and official capacities. Lopez alleged that defendants deprived John of his liberty interest by failing to stop several students from beating him unconscious on a school bus and by not training its bus drivers to handle such incidents. We conclude that summary judgment was properly entered for the school district for lack of a fact issue regarding a *Monell* custom, and in favor of two supervisors for lack of proof of their direct acts. We conclude, however, that plaintiffs may proceed to trial against the bus driver.

1. Lopez sued Bradford, Kelton, and House in their official and individual capacities. Suits against officials in their official capacities are essentially suits against the governmental units. *Kentucky v. Graham*, 473 U.S. 159, 105 S.Ct. 3099, 3105, 87 L.Ed.2d 114 (1985). These suits no longer have independent significance where the official acts on behalf of a local government unit, since local government units may be sued directly under *Monell v. Department of Local Services*, 436 U.S. 658, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978). *Kentucky*, 105 S.Ct. at 3106 n. 12. The claims against Bradford, Kelton, and House individually do maintain their significance, however, and are discussed later.

## I

### A

When reviewing a summary judgment, we must view the evidence in the same manner as the district court, asking whether there is a genuine issue of material fact and whether the movant was entitled to judgment as a matter of law. *Celotex Corp. v. Catrett*, —— U.S. ——, 106 S.Ct. 2548, 2552, 91 L.Ed.2d 265 (1986).[1] Summary judgment is appropriate where, after adequate time for discovery, a party "fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Id.* at 2552–53. We state the facts in the most favorable way to the party attacking the summary judgment.

### B

On May 17, 1982, John Adam Lopez and his sister, Diane Lopez, were riding home from Clifton Middle School on an H.I.S.D. school bus driven by Charles Bradford, a substitute driver. While the bus was on Interstate 610, three students attacked David Cardenas, a student seated next to John. The students also hit John during this melee, knocking him unconscious.

Although several students repeatedly asked Bradford to stop the bus and the fight, he did not intervene. Bradford continued driving until he came to the Ella Boulevard exit, where he pulled off of the freeway. The deposition testimony differed as to the duration of and number of fights. According to Diane Lopez, there was only one "fight" and it lasted 25 to 30 minutes before Bradford pulled the bus over. Bradford testified, however, that there were two separate fights, that he stopped the bus and intervened in the first

fight, and that he stopped the bus as soon as possible when the second fight began.

Upon exiting the freeway, Bradford stopped at a convenience store rather than taking John to the hospital located across Ella Boulevard. The hospital was immediately available upon exiting the freeway. To gain access to the convenience store, Bradford had to make a U-turn on Ella Boulevard. Again, testimony, before the district court in depositions, differed about what happened. According to Diane, Bradford did not check on John at that time, but instead went directly to a telephone booth. Bradford testified that he first checked the child, saw that the child was unconscious but not bleeding, and then left to call his supervisor, Floyd Hopkins.

While Bradford talked to Hopkins, Diane and two other students carried John across the street to the hospital. Bradford saw them, but did not attempt to help or to stop them. Nor did he go to the hospital to see if he was needed after talking to Hopkins. Bradford waited at the bus with the other students for Rick House, the H.I.S.D. Transit Safety Superintendent, to arrive. After waiting for about two hours to no avail, he took the remaining students home.

Lopez sued the H.I.S.D., Bradford, House and Clifford Kelton, the H.I.S.D. Director of Transportation, on behalf of herself and John in federal district court, asserting § 1983 claims and pendent state claims. The district court granted summary judgment in favor of the defendants, dismissing all federal claims. The district court found Lopez's claim to be barred by the statute of limitations, and found that John failed to state a § 1983 claim because the school district's negligence did not expose John to a danger focused on an identifiable group or individual. The district court also found that any failure of the school district to adopt safety plans mandated by the state implicated none of John's constitutional rights. Finally, the district court dismissed John's state law claims without prejudice because "the scope of permissible state law claims may be expanded before the statute of limitations runs against [John]."

Lopez complains to us only about the dismissal of John's asserted § 1983 claims. We treat first the claim against the H.I.S.D., and then turn to the individual defendants.

## II

### A

■ The H.I.S.D. is a local governmental body under *Monell v. Department of Social Services*, 436 U.S. 658, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978), sufficiently distinct from the state to be outside the eleventh amendment. *See Kingsville Independent School District v. Cooper*, 611 F.2d 1109, 1112 (5th Cir.1980). As a local government unit, it may not be held liable for a deprivation of a constitutional right solely because its employee is a tort-feasor, nor can it be held liable under § 1983 on a respondeat superior theory. *See Pembaur v. City of Cincinnati*, 475 U.S. 469, 106 S.Ct. 1292, 1297, 89 L.Ed.2d 452 (1986).

In *Webster v. City of Houston*, 735 F.2d 838, 841 (5th Cir.1984) (en banc), we established a standard to govern the imposition of liability under § 1983 against local government units:

A [local government unit] is liable under § 1983 for a deprivation of rights protected by the Constitution or federal laws that is inflicted pursuant to official policy.

Official policy is:

1. A policy statement, ordinance, regulation, or decision that is officially adopted and promulgated by the [local government unit]'s lawmaking officers or by an official to whom the lawmakers have delegated policymaking authority; or

2. A persistent widespread practice of [local government unit] officials or employees, which, although not authorized by officially adopted and promulgated policy, is so common and well settled as to constitute a custom that fairly represents [local government unit] policy. Actual or constructive knowledge of such custom must be attributable to the gov-

erning body of the [local government unit] or to an official to whom that body had delegated policy-making authority. Actions of officers or employees of a [local government unit] do not render the [local government unit] liable under § 1983 unless they execute official policy as above defined.

To survive the H.I.S.D.'s motion for summary judgment, Lopez must identify and produce some evidence of "(1) a policy (2) of the [H.I.S.D.]'s policymaker (3) that caused (4) the plaintiff to be subjected to a deprivation of constitutional right." *Palmer v. City of San Antonio*, 810 F.2d 514, 516 (5th Cir.1987). To hold the H.I.S.D. liable, the policy or custom "must be the moving force of the constitutional violation." *Id.* (quoting *Monell*, 436 U.S. at 694, 98 S.Ct. at 2037, 56 L.Ed.2d 637).

### B

Lopez's complaint alleged that the safety instruction provided by the H.I.S.D. was inadequate in that it failed to respond to the problem of student discipline on buses, that the H.I.S.D. delegated policy-making authority to its bus drivers and was therefore liable for the actions of Bradford, and that, even if the training were adequate, the instructions were not followed in this instance. We treat first the contention that Bradford failed to follow H.I.S.D. safety instructions, and then turn to the contention that H.I.S.D. policy was inadequate.

If the training were adequate, but not followed, the H.I.S.D. could not be held liable under § 1983 for an episodic violation of its safety instructions. *See Thibodeaux v. Arceneaux*, 768 F.2d 737, 739 (5th Cir. 1985) (error in execution, not adoption, of policy does not provide an affirmative link between the policy and the violation). As we will explain, there is no evidence in the record to suggest that the fight on the bus was not an episodic event.

But Lopez argues that the H.I.S.D.'s training policy was inadequate and a cause of John's injury, and that if Bradford had received better training he could have somehow prevented the harm to John. Ob-

viously, such a claim faces substantial problems of causation. In *Palmer*, we noted that:

An "inadequate" training program alone is not ordinarily the moving force behind an injured plaintiff's harm, because the [employee] who injures the plaintiff does not rely upon inadequate training as tacit approval of his conduct. It is not enough that the [local government unit] could, but does not, reduce the risk of harm to the plaintiff.

810 F.2d at 516; *see also City of Springfield v. Kibbe*, —— U.S. ——, 107 S.Ct. 1114, 1121, 94 L.Ed.2d 293 (1987) (O'Connor J., dissenting) (inadequacy of training may serve as basis for § 1983 liability only where the failure to train amounts to a reckless disregard for or deliberate indifference to the rights of the persons within the city's domain). Of course, the adequacy of training depends upon the task—here the problems confronting a driver of a school bus. As we understand Lopez's argument, violence on the buses was common and two related consequences flow from that circumstance. First, seen against the violence, the instructions were inadequate. Second, that violence was pervasive demonstrates a policy, or custom, of non-protection.

Lopez produced summary judgment evidence that suggested that hundreds of incidents occurred each year on H.I.S.D. buses and that the H.I.S.D.'s response to this problem was inadequate; the argument is that the H.I.S.D.'s failure to respond appropriately to this safety hazard constituted official policy in callous disregard of the students' liberty interests. However, the only evidence of pervasiveness was the testimony of Kelton that hundreds of incidents occurred each year involving students on buses. As defined by Kelton, "incidents" included parental complaints about the location of bus stops and students becoming "unruly." Nothing in the record suggested a pre-existing pattern of student fights on buses, constituting a widespread problem mandating an official response. Indeed, Lopez did not specifically prove that there had been any other

fights, despite ample time for discovery. For example, the H.I.S.D. required drivers to complete Bus Conduct Report forms reporting disciplinary problems to the H.I.S.D. principals. These forms, if discovered, might have indicated if fights actually occurred on H.I.S.D. buses.

Finally, Lopez argues that the H.I.S.D. delegated policy-making authority to Bradford. To hold Bradford's acts were the acts of the H.I.S.D. because he exercised delegated "policymaking authority," Lopez must establish that Bradford was given more than discretion to act. *See Pembaur,* 106 S.Ct. at 1299. This Lopez did not do.

### III

The district court also granted summary judgment in favor of the individual defendants, dismissing all claims brought against them in their individual capacities.

### A

Kelton and House, as supervisory officials, may not be held liable under § 1983 on a respondeat superior theory for the actions of Bradford. *See Thibodeaux v. Arceneaux,* 768 F.2d 737, 739 (5th Cir. 1985). The only arguably direct act of Kelton and House is an asserted failure to train properly H.I.S.D. bus drivers; but, causation aside, such failure must have callously disregarded John's constitutional rights. *Cf. Bowen v. Watkins,* 669 F.2d 979, 988 (5th Cir.1982) (a failure to supervise gives rise to § 1983 liability only where there is a history of widespread abuse). There is no support for a finding that Kelton or House were grossly negligent or deliberately indifferent to the constitutional rights of the H.I.S.D. students.

### B

In *Daniels v. Williams,* 474 U.S. 327, 106 S.Ct. 662, 667, 88 L.Ed.2d 662 (1986), the Supreme Court held that negligent conduct does not implicate the due process clause of the fourteenth amendment, specifically overruling *Parratt v. Taylor,* 451 U.S. 527, 101 S.Ct. 1908, 68 L.Ed.2d 420 (1981). The Court did not address the issue "whether something less than intentional conduct, such as recklessness or 'gross negligence' is enough to trigger the protections of the Due Process Clause." *Daniels,* 106 S.Ct. at 667 n. 3.

We have held that allegations of callous indifference are sufficiently within the ambit of purposeful acts to state a claim of constitutional deprivation under § 1983. *Jacquez v. Procunier,* 801 F.2d 789, 792 (5th Cir.1986). Lopez has alleged that Bradford "failed to act reasonably in carrying out his duties, same constituting an abuse by government and/or a callous disregard of Plaintiff's rights." The district court read this complaint to allege only that Bradford acted negligently in failing to protect John or render aid, and dismissed the suit against Bradford. Read liberally, however, this complaint alleged that Bradford acted in callous disregard of John's constitutional rights.

Lopez presented summary judgment evidence suggesting that Bradford continued driving for twenty-five to thirty minutes despite a fight on board his bus, that Bradford did not intervene to stop the fight, that Bradford did not check on the child once he finally stopped the bus, and that Bradford stopped at a convenience store rather than taking the unconscious child to the hospital located across the street. A trier of fact could find callous indifference if persuaded of the facts.

Arguably, even if Bradford's conduct was callous and indifferent, it was not the cause of injury to Lopez. But this turns on the sequence of events—when in the melee he was hit and whether he was pummeled after Bradford should have intervened. These are questions of fact for the jury.

We are well aware that the line between state law torts and constitutional torts is unclear at the margin. While we have made plain that conduct must rise to the level of callous indifference before it is actionable under § 1983, we have not developed our insistence that the injury and the exercise of state power be sufficiently related that the actor can be fairly said to have abused the power conferred by the

state in a way that deprives a person of rights secured under the Constitution or laws of the United States. *See Coon v. Ledbetter*, 780 F.2d 1158, 1163 (5th Cir. 1986) ("it is plain that a person injured in an automobile accident when a police officer negligently fails to yield the right-of-way has no claim for deprivation of constitutional right"). However, Bradford was entrusted with the care of students attending school under Texas' compulsory education statute, Tex.Educ.Code Ann. art. § 21.032 (Vernon's 1987). *See Horton v. Goose Creek Ind. School Dist.*, 690 F.2d 470, 480 (5th Cir.1982) (duty to protect students from harm posed by anti-social activities), *cert. denied*, 463 U.S. 1207, 103 S.Ct. 3536, 77 L.Ed.2d 1387 (1983). His alleged failure to protect John or to render emergency aid abuses state power, and supports a § 1983 action if the jury finds it rose to the level of callous indifference and was a cause of injury.

Thus, we are persuaded that the summary judgment evidence presented by Lopez presents a genuine issue of fact as to Bradford's liability; that whether his conduct constituted callous indifference cannot here be summarily resolved.

We reverse the grant of summary judgment in favor of Bradford and remand to the trial court for trial of the § 1983 claim. We affirm the district court in all other respects including its grant of summary judgment in favor of the school district, Kelton and House. We leave to the district court the question of whether, in light of this opinion, John Lopez's state claim against Bradford, dismissed without prejudice, should be reinstated.

AFFIRMED IN PART, REVERSED IN PART, and REMANDED.