Debbie Chaney
**MONTGOMERY, Plaintiff,**

v.

**James Dempsey HUGHES, Individually and in his Capacity as a Yazoo County Road Maintenance Worker; Leroy "Brother" Ellis, Individually and in his Capacity as a Yazoo County Road Construction Chief; Sam Fisher, Individually and in his Capacity as Yazoo County District Two Supervisor; A.B. "Happy" Hogue, Individually and in his Capacity as Yazoo County District Four Supervisor, and Yazoo County, Mississippi, Defendants.**

Civ. A. No. W88–0004(L).

United States District Court,
S.D. Mississippi, W.D.

Dec. 29, 1988.

Catherine W. Lee, Jackson, Miss., for plaintiff.

Trudy D. Fisher and Curtis E. Coker, Daniel Coker Horton & Bell, Jackson, Miss., for all defendants except Hughes.

K. Hayes Callicut, Shell Buford Bufkin Callicut & Perry, Jackson, Miss., for Hughes.

## MEMORANDUM OPINION AND ORDER

TOM S. LEE, District Judge.

Plaintiff Debbie Chaney Montgomery brought this action under 42 U.S.C. § 1983 alleging a conspiracy among the defendants to deprive her of her first and fourteenth amendment rights of freedom of speech and the press. The complaint further alleges that the defendants deprived plaintiff of her property and liberty rights secured under the fourteenth amendment. Plaintiff also asserts pendent state law

claims against all of the defendants under Article III §§ 13 and 14 of the Mississippi Constitution and Miss.Code Ann. § 97-1-1 (Supp.1988), and against defendant James Dempsey Hughes under Miss.Code Ann. § 97-3-7 (Supp.1988). Defendants Hughes, Leroy "Brother" Ellis, Sam Fisher and A.B. "Happy" Hogue are sued both individually and in their official capacities.[1] This cause is now before the court on motion of defendants Hogue, Ellis, Fisher and Yazoo County for summary judgment pursuant to Rule 56 of the Federal Rules of Civil Procedure. Hughes has joined in the motion. Plaintiff has filed a timely response in opposition, and the court has reviewed the memoranda with attachments submitted by the parties.

## PARTIES AND FACTS

Since August 1984 Montgomery has been employed as editor of the Yazoo Herald, a general circulation newspaper published twice weekly in Yazoo City, the county seat of Yazoo County, Mississippi. Plaintiff has also served as reporter, photographer and writer for the newspaper. At the time of the events upon which this suit is based, Hughes was employed by Yazoo County as a road maintenance worker in District Two, Ellis was employed by Yazoo County as County Road Superintendent, and Fisher and Hogue were duly elected Supervisors of Districts Two and Four, respectively, in Yazoo County. The undisputed facts show that on August 14, 1987, plaintiff, in connection with her investigation of the possible misuse of county road equipment, supplies and labor, went to the Myrleville Road site in Yazoo County to photograph road work being performed on private property by county workers with county equipment.

Plaintiff's investigation was part of a cooperative arrangement with the Mississippi State Department of Audit, and her visit to the Myrleville Road site was prompted by a tip from a Department of Audit investigator. Upon arriving, plaintiff began taking photographs. Hughes, who was working at the site, removed a twenty-gauge shotgun from the county truck he drove and fired shots in the direction of plaintiff which hit and injured her.

## SECTION 1983 CONSPIRACY CLAIM

The initial inquiry in any section 1983 action focuses on two essential elements: whether there has been a deprivation of a constitutional right, and whether that deprivation was by a person or entity acting under color of state law. *Parratt v. Taylor,* 451 U.S. 527, 535, 101 S.Ct. 1908, 1912–13, 68 L.Ed.2d 420 (1981); *Adickes v. S.H. Kress and Co.,* 398 U.S. 144, 150, 90 S.Ct. 1598, 1604, 26 L.Ed.2d 142 (1970). In this case there appears to be no dispute as to the deprivations alleged to be involved: If plaintiff was shot in retaliation for having published certain articles in the Yazoo Herald, then such action would certainly implicate her first amendment rights. Likewise, plaintiff had a liberty interest in not being injured in her person. *See Shillingford v. Holmes,* 634 F.2d 263, 265 (5th Cir.1981).[2] A finding of state action requires that Hughes' shooting of plaintiff be "fairly attributable to the State." *Lugar v. Edmondson Oil Co.,* 457 U.S. 922, 937 (1982). Because the question of state action in a section 1983 case is resolved by the same analysis as that used to determine whether the constitutional deprivation was committed by a person or entity acting under color of state law, *Rendell–Baker v. Kohn,* 457 U.S. 830, 838, 102 S.Ct. 2764,

---

**1.** The evidence indicates that Hughes and Ellis were at all times pertinent simply county employees rather than public officials, and thus there is no sense in which they could be held liable in their official capacities. Plaintiff has made no argument and produced no evidence to indicate otherwise. Accordingly, this opinion deals only with their possible liability as individuals.

As to the claims against Fisher and Hogue, pleading against them in their official capacities is simply another way of pleading against the

named defendant Yazoo County. *Kentucky v. Graham,* 473 U.S. 159, 165, 105 S.Ct. 3099, 3104–05, 87 L.Ed.2d 114 (1985) (citing *Monell v. New York City Dept. of Social Services,* 436 U.S. 658, 690, n. 55, 98 S.Ct. 2018, 2035, n. 55, 56 L.Ed.2d 611 (1978). When discussing the liability of Fisher and Hogue, this opinion refers to liability in their individual capacities.

**2.** Plaintiff also had a property interest in the blue jeans that she alleges were destroyed in the shooting.

2769–70, 73 L.Ed.2d 418 (1982) (citing *United States v. Price*, 383 U.S. 787, 794, n. 7, 86 S.Ct. 1152, 1157, n. 7, 16 L.Ed.2d 267 (1966)); *Roberts v. Louisiana Downs*, 742 F.2d 221, 223 (5th Cir.1984); *Taylor v. St. Clair*, 685 F.2d 982, 987 (5th Cir.1982), the court proceeds to the color of state law issue.

Private persons acting independently may not be held liable under section 1983 as their acts are not under color of state law; however, otherwise private conduct may be found to be under color of state law so as to subject a private individual to liability under section 1983 if that individual acts pursuant to a conspiracy with state officials or others acting under color of state law. *Dennis v. Sparks*, 449 U.S. 24, 27–28, 101 S.Ct. 183, 186, 66 L.Ed.2d 185 (1980); *Adickes*, 398 U.S. at 152, 90 S.Ct. at 1605–06; *United States v. Price*, 383 U.S. 787, 794, 86 S.Ct. 1152, 1156–57, 16 L.Ed.2d 267 (1966); *Brinkmann v. Johnston*, 793 F.2d 111, 112 (5th Cir.1986); *Auster Oil and Gas, Inc. v. Stream*, 764 F.2d 381, 387 (5th Cir.1985), *cert. dismissed,* —— U.S. ——, 108 S.Ct. 2007, 100 L.Ed.2d 237 (1988); *Fadjo v. Coon*, 633 F.2d 1172, 1175 (5th Cir.1981). Thus, Hughes' shooting of plaintiff rises to the level of a section 1983 violation only if plaintiff establishes that in so doing he was acting in furtherance of a conspiracy with the county supervisor defendants, Fisher and Hogue. And, because a section 1983 conspiracy "can furnish the conceptual spring for imputing liability from one to another," *Villaneuva v. McInnis*, 723 F.2d 414, 418 (5th Cir.1984), Ellis, a private individual, may be held liable if plaintiff demonstrates that he conspired with Fisher and Hogue, the county officials, to bring about the shooting.[3] Similarly, the involvement of Fisher and Hogue would render them vicariously liable for the shooting by Hughes if a conspiracy is shown. Thus, the first issue before the court on defendants' motion for summary judgment is whether plaintiff has produced evidence of facts which, if proved, would support a finding of a conspiracy. *See*

*Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23, 106 S.Ct. 2548, 2552–53, 91 L.Ed.2d 265 (1986) (plaintiff must come forward with proof of each element of claim to avoid summary judgment).

A civil conspiracy has been defined as "an agreement between two or more people to participate in an unlawful act or lawful act in an unlawful manner." *Hobson v. Wilson*, 737 F.2d 1, 51 (D.C.Cir.1984), *cert. denied sub nom. Brennan v. Hobson*, 470 U.S. 1084, 105 S.Ct. 1843, 85 L.Ed.2d 142 (1985). Since there is rarely direct evidence of an explicit agreement in a conspiracy case, the agreement may be proved by indirect or circumstantial evidence. *Mack v. Newton*, 737 F.2d 1343, 1350 (5th Cir. 1984); *Crowe v. Lucas*, 595 F.2d 985, 993 (5th Cir.1979). Plaintiff "must show that the defendants agreed to commit an illegal act," *Crowe*, 595 F.2d at 993, but the conclusion that a conspiracy did exist will often be based, by necessity, upon "inferences that may fairly be drawn from the behavior of the alleged conspirators," *Mack*, 737 F.2d at 1351 (quoting *Michelman v. Clark–Schwebel Fiber Glass Corp.*, 534 F.2d 1036, 1043 (2d Cir.), *cert. denied*, 429 U.S. 885, 97 S.Ct. 236, 50 L.Ed.2d 166 (1976)). Because this determination may involve questions of motive or intent, summary judgment is often inappropriate in a section 1983 conspiracy case. For example, in *Adickes v. S.H. Kress and Co.*, 398 U.S. 144, 90 S.Ct. 1598, 26 L.Ed.2d 142 (1970), the United States Supreme Court held that summary judgment should have been denied in a case involving an alleged section 1983 conspiracy between a privately owned restaurant and a policeman. The plaintiff, a white, was refused service in the restaurant because she was in the company of blacks. Upon exiting the restaurant, she was arrested on a groundless charge of vagrancy. The Court found that circumstances were such that a fact finder could infer a prior agreement to refuse the plaintiff service, given the fact that a witness for the plaintiff stated that the arresting

---

**3.** The court would note that a conspiracy between the two private individuals, Hogue and Ellis, would not give rise to section 1983 liability since section 1983 requires state action and conduct under color of state law.

policeman was in the store at the time plaintiff was refused service. The Court held that because the presence of the policeman would be material to the finding of a conspiracy, the issue should be resolved by the jury.

Similarly, the Fifth Circuit has found the entry of summary judgment unwarranted in several section 1983 conspiracy cases in which overt acts of the defendants were for the most part undisputed and the only real issue was whether these acts were committed pursuant to and in furtherance of an agreement. In *Crowe v. Lucas*, 595 F.2d 985 (5th Cir.1979), the court concluded that a jury could reasonably infer the existence of a conspiracy from evidence of private meetings where the plaintiff was discussed and from evidence that the defendants engaged in a course of conduct which ultimately brought about plaintiff's arrest. Likewise, the defendants' intent was the issue in *Thomas v. City of New Orleans*, 687 F.2d 80 (5th Cir.1982), in which the court held that, based on evidence that the defendants met privately and discussed the plaintiff police officer's allegations of departmental wrongdoing before firing him, a reasonable jury could find that defendants had conspired to retaliate against the plaintiff for exercising his first amendment rights to free speech. In each of these cases, there was objective evidence, as for example of private meetings and overt acts, from which a jury could infer the existence of a conspiracy; the only issue for decision was the motive or intent of the actors, an issue appropriately resolved by the jurors' assessment of the credibility of the witnesses. *See Fisher v. Shamburg*, 624 F.2d 156 (10th Cir.1980) (where evidence indicated that three white defendants together shouted racial slurs and assaulted black plaintiff, court should allow jury to weigh credibility of testimony of defendants denying conspiracy).

However, proof of overt acts or a course of conduct by defendants does not necessarily support a reasonable inference of a conspiracy. *Gramenos v. Jewel Companies*, 797 F.2d 432 (7th Cir.1986), and *Moore v. Market Place Restaurant*, 754 F.2d 1336 (7th Cir.1985), were similar cases

involving allegations that law enforcement officers had arrangements with business owners to arrest any patrons designated by the businesses, with or without probable cause. In both cases the Seventh Circuit held that the private business owners could not be held liable under section 1983 absent some evidence of an agreement with the law enforcement officers. According to the court in *Gramenos*, even if the jury chose to disbelieve the defendants' denials of conspiracy, the plaintiff would be left with no evidence to support a verdict in his favor. As the court explained, "[a] party may not cry 'conspiracy' and throw himself on the jury's mercy." *Gramenos*, 797 F.2d at 436; *accord Fonda v. Gray*, 707 F.2d 435, 438 (9th Cir.1983) (mere fact that conspiracy is alleged will not defeat adequately supported motion for summary judgment). Likewise, in *Endicott v. Huddleston*, 644 F.2d 1208 (7th Cir.1980), the Seventh Circuit held that where all the plaintiff had shown was that numerous conflicts existed between the plaintiff county supervisor of assessments and the defendant county board, that at least two of the defendants had wanted to remove the plaintiff from office and that the defendant board subsequently failed to reappoint the plaintiff, the evidence failed to support a section 1983 conspiracy claim based on an alleged violation of plaintiff's first amendment free speech rights.

*Aubin v. Fudala*, 782 F.2d 280 (1st Cir.1983), represents an even stricter application of summary judgment standards to a section 1983 conspiracy case. In *Aubin*, the plaintiff alleged a conspiracy between a town and its police chief and policemen to cover up a tragic mistake that led to the shooting of the plaintiff by a police officer. The evidence, viewed in the light most favorable to the plaintiff, showed that physical evidence implicating the officer disappeared from the scene, that the plaintiff's brother who was also present at the scene was handcuffed and treated like a criminal, that the police officer involved told conflicting stories, that the officer's superior sent him home instead of questioning him, that one of the officer's co-workers gave ques-

tionable testimony about the circumstances of the shooting, and that the police department officials released incorrect and prejudicial information regarding the incident to the media. The court held that the defendants' individual acts, though perhaps similarly motivated, were insufficient proof of a conspiracy:

> The problem for the plaintiffs is not the propriety of the acts they cite, but, rather, whether they show *agreement.* Was there a 'single plan the essential nature and general scope of which [was] known to each person who is to be held responsible for its consequences?' *Hampton v. Hanrahan,* 600 F.2d 600, 621 (7th Cir.1979) (quoting *Hoffman–La-Roche, Inc. v. Greenberg,* 447 F.2d 872, 875 (7th Cir.1971)). At the least, did the parties decide to act "interdependently," each actor deciding to act only because he was aware that the others would act similarly? Most of the acts cited were performed by different individuals very shortly after the shooting. At worst for defendants (and at best for plaintiffs) they show that individual officers would have liked to help Fudala. But, to show more than that, to show an implicit or explicit *agreement* to do so, would have taken more. On this record, the trial judge could have reasonably concluded that the jury could have found the "more" only with the aid of impermissible speculation.

*Aubin,* 782 F.2d at 286 (citations omitted).

The view that there is nothing inherent in a section 1983 conspiracy claim inevitably requiring submission of the claim to the jury is supported by *Love v. King,* 784 F.2d 708 (5th Cir.1986). In *Love,* the court noted that while it was required to draw inferences favorable to the plaintiffs, those inferences "must be 'within the range of reasonable probability'." *Id.* at 711 (quoting *Radiation Dynamics v. Goldmuntz,* 464 F.2d 876, 887 (2d Cir.1972)). "When the necessary inference is so tenuous that it rests merely upon speculation and conjecture, it is the duty of the court to withdraw the case from the jury." *Love,* 784 F.2d at 711 (citing *Radiation Dynamics,* 464 F.2d at 887).

Plaintiff's response to defendants' motion alleges numerous facts which she claims support a reasonable inference of a conspiracy. Nevertheless, the court finds that the following are the only facts relevant to a conspiracy for which there is any evidence of record:

(1) On July 2, 1987, plaintiff went to a site where allegedly illegal county road work was being performed and took photographs. An unnamed county worker at the site drove a bulldozer toward plaintiff and came within approximately five feet of her before turning sharply into a ditch to avoid her. That evening Ellis telephoned plaintiff, telling her "My boys don't like what you're doing. . . . You had better watch out. My boys are going to get you." When plaintiff asked if this was a threat, Ellis replied, "Hell yeah, it's a threat." Plaintiff also asked Ellis, "Why did your guy drive the bulldozer down into the ditch, Brother?" He replied, "You made him mad. He didn't like what you were doing."

(2) On July 6, 1987, plaintiff attended a Board of Supervisors' meeting at which defendants Hogue and Fisher were present. While discussing plaintiff's investigation of county road work, Hogue said, "You are out there meddling and snooping around where folks can't perform their duty like they ought to. You know that ain't right." At the same meeting Fisher used the phrase "if you don't watch out," and intimated that plaintiff's reporting was causing political factions to develop in the community: "You are going to wind up with a situation, you going to have goats and sheep here. If you don't watch,[4] the people in the rural area expect this. The people in town don't. Now, I don't know whether the rural people don't appreciate it at all,

---

**4.** Although the transcript of the meeting offered by plaintiff reads "If you don't watch," in her deposition plaintiff stated that Fisher's words were "If you don't watch out." For purposes of ruling on a summary judgment motion, the court assumes that the version more favorable to plaintiff's case is correct.

what is being done and what is being said about private work."

(3) In early July, Paul Luby, Hughes' road work supervisor, discussed with his men, including Hughes, the possibility that plaintiff might come to a work site to take photographs as part of her investigation.

(4) According to the affidavit of Leon C. Coody, around the first of August, Hughes told Coody that "he was carrying a shotgun with him in the truck he used while employed as a Yazoo County road maintenance worker, that he was tired of picture-taking, and that he would stop anybody from interfering with his work."

(5) On August 14, 1987, Ellis was at the Myrleville road site and had reason to believe that plaintiff might be on her way to investigate. He left before plaintiff arrived.

(6) Hughes stated after the shooting that the reason for his actions was that he did not want pictures taken of county road work.

A conspiracy may be proved by either evidence showing some communication and agreement between the alleged conspirators, or evidence of actions which, if taken pursuant to an agreement, would constitute a section 1983 violation. *See, e.g., Hobson*, 737 F.2d at 55 (absent proof that police department defendants either knew of or engaged in activities to complement illegal activities of FBI defendants, court could not permit inference of improper motive by police department defendants). Here, however, all plaintiff has shown is that defendants, as well as many other persons,[5] were unhappy with plaintiff's investigative activities and would have liked for plaintiff's reporting on the alleged misuse of county road equipment to cease, and that one of the defendants shot her in an apparent attempt to stop her reporting and

investigation. Plaintiff has produced no evidence that Fisher, Hogue or Ellis ever met with or talked to Hughes concerning plaintiff or any other matter or that they knew Hughes carried a gun in his truck. There is a complete absence of any evidence to show that Fisher, Hogue or Ellis had any plan to injure plaintiff. Furthermore, plaintiff has failed to allege any relationship at all between Hughes and any of the other defendants other than to charge that Hughes was employed by the county in District Two, Fisher's district, and that Hughes, as a road worker, was under the supervision of Ellis, the county road superintendent.

■ Given the evident dissatisfaction of many with plaintiff's activities, a fact of which the defendants were obviously aware, perhaps it could be said that injury to plaintiff was not completely outside the bounds of foreseeability. However, in the absence of proof that defendants Fisher or Hogue agreed to procure that injury or acquiesced in a plan directed toward that end, there can be no finding of a conspiracy for purposes of section 1983 liability. A common aversion to the plaintiff's investigation is too weak a strand with which to link the defendants in this case. At most, it can be said that the facts alleged in this case are not inconsistent with the theory of a conspiracy. Indeed, one could speculate that the defendants possibly reached an understanding that plaintiff's investigation had to be stopped, and that, if necessary, Hughes would fire a gun at her in order to achieve that purpose. But a mere possibility, based upon speculation, is insufficient to preclude the entry of summary judgment. *Brown v. Scott Paper Co.*, 684 F.Supp. 1392, 1396 (S.D.Miss.1987) (citing *Smith v. General Motors Corp.*, 227 F.2d 210, 213 (5th Cir.1955)).

---

**5.** Plaintiff has also alleged and/or produced evidence of numerous phone calls, some anonymous, in the months during which she investigated county road work warning her to stop her reporting. Plaintiff claims these events support her conspiracy allegation but is unable to establish any link between these calls and the defendants. As one court has said in a section 1983

conspiracy case, "Without any evidence connecting these overt acts to either the ... defendants or to the conspiracy alleged in the complaint, the mere occurrence of hostile acts against the [plaintiff] does not support the finding of a conspiracy involving the ... defendants." *Benson v. Allphin*, 544 F.Supp. 464, 468 (N.D.Ill. 1982).

## OTHER THEORIES OF SECTION 1983 LIABILITY

In addition to alleging a section 1983 conspiracy, the complaint also charges that defendants Ellis, Fisher and Hogue "contributed directly to or caused defendant Hughes to shoot the plaintiff." Thus, the second issue before the court is whether, notwithstanding plaintiff's failure to produce evidence of a conspiracy, the defendants may nevertheless be held liable under section 1983, in either their individual or official capacities, on some theory other than conspiracy.

■ No additional analysis is necessary with regard to Ellis because only by acting pursuant to a conspiracy with the county supervisor defendants would he satisfy the state action and color of state law requirements of the statute. Fisher and Hogue, on the other hand, as public officials, could conceivably incur individual liability under section 1983 if plaintiff produced evidence to support her conclusory allegation that they "contributed directly to or caused defendant Hughes to shoot" her. However, plaintiff has neither alleged nor produced evidence to support such a causal connection; rather, this allegation is apparently based upon the same scenario as that with regard to her conspiracy allegation, *i.e.,* that Fisher and Hogue told or encouraged Hughes to shoot plaintiff. Again there is no evidence to support this theory. Neither may Fisher and Hogue be liable for Hughes' act simply because he was a county employee and under their supervision. It is well settled that section 1983 liability may not be based solely on the theory of *respondeat superior. Monell v. New York City Dept. of Social Services,* 436 U.S. 658, 691, 98 S.Ct. 2018, 2036, 56 L.Ed.2d 611 (1978); *Kline v. North Texas State University,* 782 F.2d 1229, 1234 (5th Cir.1986); *Thibodeaux v. Arceneaux,* 768 F.2d 737, 739 (5th Cir.1985).

■ Finally, there remains to be resolved the issue of liability of defendant Yazoo County. In order for a local governmental body to be held liable under section 1983, the deprivation of rights must be "inflicted pursuant to official policy." *Lo-pez v. Houston Independent School Dist.,* 817 F.2d 351, 353 (5th Cir.1987) (quoting *Webster v. City of Houston,* 735 F.2d 838, 841 (5th Cir.1984)). Official policy includes

> [a] persistent widespread practice of [local government unit] officials or employees, which, although not authorized by officially adopted and promulgated policy, is so common and well settled as to constitute a custom that fairly represents [local government unit] policy. Actual or constructive knowledge of such custom must be attributable to the governing body of the [local government unit] or to an official to whom that body had delegated policy-making authority. Actions of officers or employees of a [local government unit] do not render the [local government unit] liable under § 1983 unless they execute official policy....

*Lopez,* 817 F.2d at 353–54 (quoting *Webster,* 735 F.2d at 841); *see also Monell v. New York City Dept. of Social Services,* 436 U.S. 658, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978); *Bennett v. City of Slidell,* 728 F.2d 762 (5th Cir.1984), *cert. denied,* 472 U.S. 1016, 105 S.Ct. 3476, 87 L.Ed.2d 612 (1985); *Joiner v. City of Ridgeland, Miss.,* 669 F.Supp. 1362 (S.D.Miss.1987). Plaintiff has produced no evidence whatsoever that Hughes' acts were part of a "widespread problem mandating an official response." *Lopez,* 817 F.2d at 354. Thus, because there exists no evidence of any custom on the part of defendant Yazoo County, the county is entitled to judgment as a matter of law.

## STATE LAW CLAIMS

■ Plaintiff's complaint charges that all defendants violated Article III, §§ 13 and 14 of the Mississippi Constitution of 1890 (the free speech and due process clauses, respectively) and Miss.Code Ann. § 97–1–1 (Supp.1988), Mississippi's criminal conspiracy statute. Additionally, the complaint charges that Hughes violated Miss. Code Ann. § 97–3–7 (Supp.1988), a criminal assault statute, "to the detriment of plaintiff." In deciding whether to exercise jurisdiction over these pendent state law

claims, this court is guided by the considerations of judicial economy, convenience and fairness to the litigants. *Carnegie–Mellon University v. Cohill*, 484 U.S. 343, 108 S.Ct. 614, 618–19, 98 L.Ed.2d 720 (1988); *United Mineworkers v. Gibbs*, 383 U.S. 715, 726, 86 S.Ct. 1130, 1139, 16 L.Ed.2d 218 (1966). The court is also guided by the general rule, though not absolute, that when the federal claims are dismissed before trial, the state claims should be dismissed as well. *Gibbs*, 383 U.S. at 726, 86 S.Ct. at 1139; *Ingram Corp. v. J. Ray McDermott & Co.*, 698 F.2d 1295, 1319 (5th Cir.1983). Because there has thus far been no substantial commitment of federal judicial resources with regard to these claims, *see La Porte Constr. Co. v. Bayshore Nat'l Bank of La Porte, Tex.*, 805 F.2d 1254, 1257 (5th Cir.1986), and because two of the claims present the novel question of whether any civil cause of action exists for violations of the free speech and due process clauses of the Mississippi Constitution, *see id.*, the court finds that the considerations set forth above militate in favor of dismissal of the pendent state law claims.

However, an unconditional dismissal of the pendent state law assault claim against Hughes could be an abuse of discretion in light of the fact that the one-year statute of limitations, Miss.Code Ann. § 15–1–35 (Supp.1988), has run on this claim. *Saulsberry v. Atlantic Richfield Co.*, 673 F.Supp. 811, 816 (citing *L.A. Draper & Son v. Wheelabrator–Frye, Inc.*, 735 F.2d 414, 428 (11th Cir.1984); *O'Brien v. Continental Ill. Nat'l Bank & Trust Co.*, 593 F.2d 54, 64–65 (7th Cir.1979). And, assuming, without deciding, that plaintiff has stated state law civil conspiracy and constitutional deprivation claims, a state court might apply the one-year statute to these claims as well. Accordingly, the court will dismiss the pendent state law claims upon the condition that all defendants submit to the jurisdiction of the state circuit court and that they waive any defense to those claims based on the statute of limitations. Although it is plaintiff's election as to whether to pursue the state law claims in state court, that choice shall be made within thirty days of entry of this order.

## SUMMARY

Because of the lack of any genuine issue of material fact, summary judgment for all of the defendants is granted on the section 1983 claim. The pendent state claims are dismissed upon the conditions set forth hereinabove.

A separate judgment shall be entered pursuant to Federal Rule of Civil Procedure 58.

ORDERED.